UNITED STATES, Appellee

v.

Enrique GONZALEZ, Corporal, U.S.
Marine Corps, Appellant.

No. 94–0771.
CMR No. 92 00058.

U.S. Court of Appeals for
the Armed Forces.

Argued April 4, 1995.

Decided Sept. 22, 1995.

For Appellant: *Hillary Richard* (argued); *Major Steven P. Hammond,* USMC and *Lieutenant David P. Sheldon,* JAGC, USNR.

For Appellee: *Colonel J. Composto,* USMC (argued); *Commander S.A. Stallings,* JAGC, USN, and *Major Laura L. Scudder,* USMC (on brief); *Colonel T.G. Hess,* USMC and *Lieutenant Commander Lyle H. Bowen, Jr.,* JAGC, USN.

*Opinion of the Court*

SULLIVAN, Chief Judge:

1. On April 18, May 13 and 22–25, 1991, appellant was tried by a general court-martial composed of a military judge [1] alone. Contrary to his pleas, he was found guilty of desertion with intent to avoid hazardous duty and/or shirk important service and missing movement through design, in violation of Articles 85 and 87, Uniform Code of Military Justice, 10 USC §§ 885 and 887, respectively. The military judge sentenced appellant to a dishonorable discharge, confinement for 30 months, total forfeitures, and reduction to pay grade E–1. On December 17, 1991, the convening authority approved the sentence as adjudged but, as a matter of clemency, suspended approximately 23 months of the confinement for a period of one year from the date of trial. On January 26, 1994, the Court of Military Review [2] affirmed the findings (except for the language "avoid hazardous duty and/or" in the desertion specification) and the approved sentence. 39 MJ 742, 747.

1. On page 2 of the record the military judge is named. On page 12 a new judge takes over but does not identify himself until page 31, in the third session after his appearance in the trial. All parties to the trial should be identified before participating in the proceedings.

2. *See* 41 MJ 213, 229 n. * (1994).

2. On October 5, 1994, this Court granted review on the following issues raised by appellate defense counsel:

### I

WHETHER THE COURT'S AFFIRMANCE OF APPELLANT'S DESERTION CONVICTION, DESPITE ITS FINDING THAT HE "DID NOT, IN FACT, AVOID OR SHIRK" HAZARDOUS DUTY OR IMPORTANT SERVICE AS A CONSEQUENCE OF HIS ABSENCE, IS IN DIRECT CONFLICT WITH THE LAW OF THIS COURT.

### II

WHETHER THE COURT'S AFFIRMANCE OF APPELLANT'S DESERTION CONVICTION, DESPITE ITS FINDING THAT HIS MEDICAL DISQUALIFICATION "WOULD HAVE PREVENTED HIM FROM EMBARKING WITH HIS UNIT IN ANY EVENT," ELIMINATES AN ELEMENT OF THE OFFENSE OF DESERTION REQUIRED UNDER ARTICLE 85 OF THE UNIFORM CODE OF MILITARY JUSTICE.

We hold that the Court of Military Review's findings of fact as to appellant's medical disqualification for embarkation did not legally preclude his conviction for desertion with intent to shirk important service. *See United States v. Smith,* 18 USCMA 46, 39 CMR 46 (1968). We further hold that proof of the actual occurrence of important service by an accused's unit during his absence is not necessary for conviction of this form of desertion. *United States v. Squirrell,* 2 USCMA 146, 151, 7 CMR 22, 27 (1953); *see United States v. Apple,* 2 USCMA 592, 593, 10 CMR 90, 91 (1953).

3. Appellant stands before this Court guilty of the following offense as affirmed by the court below:

Specification: In that [appellant], ordered to active duty, did, on or about 28 November 1990, without authority, with the intent to shirk *important service, namely: embarkation to the Arabian Peninsula,* quit his unit, to wit: Anti–Tank Company, 8th Tank Battalion, 4th Marine Division (Rein), Fleet Marine Force, located at Miami, Florida, and did remain so absent until on or about 26 December 1990.

(Emphasis added.)

4. The court below found the following facts concerning this offense:

The appellant was one of many Marine Corps reservists called up by executive order to support Operation Desert Shield in the Persian Gulf in response to the invasion of Kuwait by Iraqi forces in August 1990. He was attached to Anti–Tank (TOW) Company, 8th Tank Battalion, 4th Marine Division in Miami, Florida. He initially complied with his written orders to report to his unit in Miami on 26 November 1990 for further transfer to Camp Lejeune for training for eventual deployment to Saudi Arabia to join forces with the Second Marine Expeditionary Force (II MEF). During his brief time in Miami, the appellant brought to the attention of his superiors a medical condition related to his urinary tract. He produced a note from a civilian physician to the effect that he had been treated for a urinary tract infection and a bladder neck obstruction. He was referred to an Air Force urologist at nearby Homestead Air Force Base who examined him immediately and determined that he was fit for duty contingent upon his receiving further testing at Camp Lejeune. The physician opined that he would need to see the results of those additional tests before he declared him fit to deploy to Southwest Asia. He did advise the appellant that he would need further testing before a proper diagnosis could be made.

Back at his unit, the appellant was informed by a chief hospital corpsman that he was fit for duty and was set to deploy with his unit to Saudi Arabia. The chief also acknowledged that the Air Force urologist had ordered further tests concerning the appellant's medical condition. He, in turn, advised the appellant that these tests would be performed at Camp Lejeune. *When the unit assembled at Miami on 28 November to move by aircraft to Camp*

*Lejeune, the appellant was absent without authority and did not move with his unit.*

*The appellant surrendered to a Marine Corps office in New York City on 26 December 1990.* At the same time, he presented an application for conscientious objector status in accordance with applicable departmental instructions, in which he asserted, *inter alia,* that he had been "called to active duty ... in order to travel to Saudi Arabia to participate in an operation which calls for war" and that he "chose to leave Florida." He was subsequently transferred to Camp Lejeune where his unit was still present. *When his command eventually deployed to Southwest Asia in late January 1991, the appellant did not accompany it.* By that time he had been found "not physically qualified" by a medical board following a recommendation to that effect by a Navy urologist at Camp Lejeune. That recommendation was based upon the same urinary tract condition for which he had been examined at Homestead Air Force Base. In the Navy doctor's opinion, the appellant should not have been activated at all....

39 MJ at 744–45 (record citations and footnote omitted; emphasis added).

———

5. Appellant asserts that the Court of Military Review erred in affirming his conviction for desertion with intent to shirk important service for two related reasons. First, he argues that the lower court's factual finding that he was ultimately medically disqualified for "embarkation to the Arabian Peninsula"—39 MJ at 748, fatally contradicts its legal conclusion that the service he intended to shirk was "important"—*id.* at 748–49. Second, he notes the lower court's factual findings that he did not *actually* shirk important service because appellant's unit never embarked for the Arabian Peninsula during his absence-*id.* at 748. He submits that this factual finding also invalidates the court's legal conclusion that he intended to shirk "important" service. We disagree.

6. As a starting point, we note that the lower court affirmed findings of guilty of desertion with intent to shirk important service in violation of Article 85(a)(2) (short desertion [3]). That Article provides: "Any member of the armed forces who .... quits his unit, organization, or place of duty with intent to avoid hazardous duty or to shirk important service ... is guilty of desertion." The intent to shirk important service is a specific intent which the prosecution must prove existed in appellant at the inception or sometime during his absence from his unit. *See United States v. Vick,* 3 USCMA 288, 12 CMR 44 (1953); *United States v. Shull,* 1 USCMA 177, 2 CMR 83 (1952). Whether an intent to avoid some particular service existed in an accused is a subjective question of fact depending on proof of his direct statements or circumstances reflective of his state of mind. *United States v. Apple,* 2 USCMA 592, 10 CMR 90 (1953); *United States v. Taylor,* 2 USC-MA 389, 392, 9 CMR 19, 22 (1953). Whether such service was important within the meaning of Article 85(a)(2), however, is an objective question of fact dependent on evidence of circumstances surrounding the service to be performed. *United States v. McKenzie,* 14 USCMA 361, 34 CMR 141 (1964); *United States v. Merrow,* 14 USCMA 265, 34 CMR 45 (1963); *cf. United States v. Deller,* 3 USC-MA 409, 412–13, 12 CMR 165, 168–69 (1953).

7. Paragraph 9b(2), Part IV, Manual for Courts–Martial, United States, 1984, delineates the different elements of proof of desertion. It states:

(2) *Desertion with intent to avoid hazardous duty or to shirk important service.*

(a) That the accused quit his or her unit, organization, or other place of duty;

(b) *That the accused did so with the intent to avoid a certain duty or shirk a certain service;*

(c) *That the duty to be performed was hazardous or the service important;*

---

3. An excellent treatment of the nature and history of the offense of desertion with intent to shirk important service may be found in Avins, *A His-tory of Short Desertion,* 13 Mil.L.Rev. 143 (1961); *see also* Comment, *A Further History of Short Desertion,* 17 Mil.L.Rev. 135 (1962).

(d) That the accused knew that he or she would be required for such duty or service; and

(e) That the accused remained absent until the date alleged.

(Emphasis added). Appellant's initial challenge to his conviction is that the Court of Military Review legally erred in concluding that his imminent "embarkation to the Arabian Peninsula" was "important" service.

■ 8. The question of what service is important for purposes of Article 85(a)(2) is not new to this Court. *See generally United States v. Boone*, 1 USCMA 381, 384, 3 CMR 115, 118 (1952); *United States v. Hemp*, 1 USCMA 280, 3 CMR 14 (1952). Review of our case law clearly indicates that important service in this context means the importance of the service to the military establishment. *See United States v. Smith*, 18 USCMA at 49, 39 CMR at 49; *United States v. Deller*, *supra*. As noted above, our cases have generally required an objective determination of that importance based on the expected military situation in which the duty or service is to be performed. *See United States v. McKenzie* and *United States v. Merrow*, both *supra*, and *supra*. ¶ 6 Consequently, we must reject appellant's contention that his personal medical condition and subsequent medical disqualification *per se* characterized "embarkation to the Arabian Peninsula" for Operation Desert Storm/Desert Shield as unimportant service. *See United States v. Smith*, *supra*.[4] *See generally United States v. Swanholm*, 36 MJ 743, 745 (ACMR 1992).

■ 9. Assuming "important service" in the context of Article 85(a)(2) is more subjective in nature and includes consideration of appellant's particular ability or qualification to perform that service—*see United States v. Merrow*, 14 USCMA at 268, 34 CMR at 48,

appellant fares no better.[5] His medical condition and subsequent medical disqualification were not the only factual circumstances bearing on the question of the importance of his imminent service. The lower court also found as fact that appellant was determined fit for deployment at the time of his absence and that he missed the scheduled military doctor's appointment to further investigate his medical objection to embarkation. 39 MJ at 745. In this context, it would be presumptuous for this Court to say appellant's service at the time of his quitting his unit was not important to the Government. *E.g., United States v. Austin*, 27 MJ 227 (CMA 1988); *see generally United States v. Ray*, 7 USCMA 378, 22 CMR 168 (1956); *United States v. Squirrell*, 2 USCMA at 151, 7 CMR at 27 (intent at time of quitting unit). Accordingly, based on the Court of Military Review's findings of fact, we simply cannot say as a matter of law that appellant's expected performance of the charged service was unimportant. *See also United States v. Merrow*, *supra* at 268, 34 CMR at 48.

■ 10. Appellant's second argument is that his conviction for desertion must be overturned because the Court of Military Review found that "appellant's unit did not embark to engage in hazardous duty or important service during his absence so he did not, in fact, avoid or shirk it as a consequence of his absence." 39 MJ at 746. He again asserts that such a factual ruling by the lower court disproves an element of the charged offense, *i.e.,* that the service to be performed was important. *See* para. 9b(2)(c), Part IV, Manual, *supra*. He further contends that certain language of this Court in *United States v. Shull*, 1 USCMA at 182–83, 2 CMR at 88–89, supports his argument.[6] For several reasons we disagree.

---

4. At one time, embarkation for duty in a combat zone overseas was *per se* important service. However, this Court later opted to subject even this military service to more exact scrutiny as to the particular military service expected. *United States v. Smith*, 18 USCMA 46, 39 CMR 46 (1968); *see generally United States v. Walker*, 26 MJ 886, 888 n. 3 (AFCMR), *pet. denied*, 27 MJ 463 (1988).

5. A logical argument could be made that, since the military itself would not have allowed this service to be performed at all by appellant, it implicitly recognized that the performance of that service by him was not important.

6. That language is as follows:
    In conclusion, it should be said that we are not concerned directly or immediately at all with the accused's alleged and probable do-

11. As a starting point, we note that Article 85(a)(2) is a criminal statute with specific language and a particular history applying it.[7] In interpreting this language this Court has recognized that it does not prohibit absence without leave from a unit engaged in hazardous duty; rather it prohibits absence without leave with *an intent to avoid* hazardous duty. *United States v. Apple*, 2 USCMA at 593, 10 CMR at 91. This same distinction logically applies to the statute's proscription against desertion with intent to shirk important service.

12. Appellant's argument, however, rests more particularly on the Manual explanation of important service as service "to be performed." Para. 9b(2)(e). It construes this language as requiring that the performance of the service be in the future. We note that it is beyond cavil that Manual explanations of codal offenses are not binding on this Court. *See United States v. Hemingway*, 36 MJ 349, 351 (CMA 1993). In any event, we see no actual performance requirement in this language; rather there is only a requirement of reasonable expectation that this service will be performed. *United States v. Shull*, 1 USCMA at 182, 2 CMR at 88. (Certainly there is not that imminence of the important service allegedly demanded by the soundest theory and best considered military cases.) In sum, the above language seized upon by appellant simply cannot be construed in a vacuum oblivious to its context and experience.

13. We have also held that conduct of an accused after quitting his unit with the requisite intent does not undermine his guilt of this offense. *See United States v. Squirrell*, 2 USCMA at 151, 7 CMR at 27. Also, as pointed out by the Government, this Court has affirmed convictions of desertion in circumstances where the unit did not actually perform the important service during the accused's absence. *Id; see United States v. Gameroz*, 3 CMR 273 (ABR 1952), *pet. denied*, 2 USCMA 663, 5 CMR 130 (1952).

14. Finally, appellant's argument based on words extracted from this Court's decision in *United States v. Shull*, 1 USCMA at 182–83, 2 CMR at 88–89, is unpersuasive. There, this Court considered the problem of a soldier with multiple motives for quitting his unit and the possibility of proving an intent to shirk in such circumstances from the act of shirking itself. We neither considered nor decided that actual performance of duty by the unit was necessarily required for conviction of this offense.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.

---

mestic difficulties as such. Whether his intent in overstaying his pass on March 12 was to deal with them, or whether he had some other motive, is a question of fact, and if a court-martial on the basis of legally sufficient evidence had reached the conclusion that he had some other intent—say one to shirk important service, for example—we could not properly disturb such a finding. What we are attempting to suggest at this point is merely that we do not mean to enunciate a rule necessarily requiring in such a situation that a court-martial conclude that an accused's primary motive must have been to avoid the important service or the hazardous duty alleged. *It is enough,*

we hold, that in a case of this nature a court-martial determine on the basis of substantial evidence that the duty was imminent, and that as a consequence of his unauthorized absence the accused in fact avoided it or had reasonable cause to know that he would do so. Since one in the position of such an accused will be deemed to have intended the natural and probable consequences of his actions, we cannot in propriety complain if a court-martial regards primacy among motives as unimportant.
*United States v. Shull*, 1 USCMA 177, 182–83, 2 CMR 83, 88–89 (1952) (emphasis added).

7. *See* n. 3, *supra*.