UNITED STATES, Appellee,

v.

Aaron P. PRITT, Radioman Seaman,
U.S. Navy, Appellant.

No. 99–0912.
Crim.App. No. 98–1660.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 3, 2000.

Decided Aug. 31, 2000.

SULLIVAN, J., delivered the opinion of
the Court, in which CRAWFORD, C.J.,
GIERKE, and EFFRON, JJ., and COX, S.J.,
joined.

For Appellant: *Lieutenant Omar R. Lo-
pez,* JAGC, USNR (argued).

For Appellee: *Lieutenant William C.
Minick,* JAGC, USNR (argued); *Colonel
Kevin M. Sandkuhler,* USMC, and *Com-
mander Eugene E. Irvin,* JAGC, USN (on
brief).

Judge SULLIVAN delivered the opinion
of the Court.

On March 6, 1998, appellant was tried by a
general court-martial composed of a military
judge sitting alone at the Naval Legal Ser-
vice Office, Mayport, Florida. Pursuant to
his pleas, he was found guilty of flight from
apprehension and three specifications of lar-
ceny, in violation of Articles 95 and 121,
Uniform Code of Military Justice, 10 USC
§§ 895 and 921, respectively. He was sen-
tenced to a bad-conduct discharge, confine-
ment for 13 months, total forfeitures, and
reduction to E–1. On August 28, 1998, the
convening authority approved the sentence
as adjudged except that he suspended all
confinement in excess of 12 months and made
provision for payment of forfeitures to appel-
lant's wife until 6 months from the date of
the action. On June 25, 1999, the United
States Navy–Marine Corps Court of Crimi-
nal Appeals affirmed the findings and sen-
tence. *United States v. Pritt,* 52 MJ 546
(N.M.Ct.Crim.App.1999).

On October 22, 1999, we granted review of
the following issue:

WHETHER THE LOWER COURT
ERRED IN FINDING THAT THE EF-
FECTIVE DATE OF THE AMEND-
MENT TO ARTICLE 95, UCMJ, WAS
FEBRUARY 10, 1996, WHEN THE
PRESIDENT'S EXPRESS DIRECTION
IN EXECUTIVE ORDER 13086, WHICH
MADE THE OFFENSE OF FLEEING
APPREHENSION PUNISHABLE, SPE-
CIFICALLY STATES THAT "NOTHING
CONTAINED IN THESE AMEND-
MENTS SHALL BE CONSTRUED TO
MAKE PUNISHABLE ANY ACT DONE
OR OMITTED PRIOR TO JUNE 26,
1998, WHICH WAS NOT PUNISHABLE
WHEN DONE OR OMITTED."

We hold that the lower court did not err in concluding that the effective date of the amendment to Article 95 of the Uniform Code of Military Justice was February 10, 1996, the date of its enactment. *See Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991); *see generally United States v. Gonzalez,* 42 MJ 469, 474 (1995); *see also United States v. Poole,* 47 MJ 17, 18 n. * (1997). Additionally, Executive Order No. 13,086 does not prohibit prosecution of appellant's conduct which occurred on October 29, 1997, under this amended statute.

Appellant, a 21–year–old sailor with 2 years of active service was assigned to the USS SAMUEL ELIOT MORISON (FFG 13) at Mayport, Florida. Pursuant to his pleas, he admitted that in October of 1997, he broke into the automobile of three other sailors and stole various items, such as speakers, tape players, a radar detector, a compact disc changer, and compact discs. He also admitted that on October 29, 1997, he was discovered by the police while engaging in these criminal acts and attempted to avoid arrest by fleeing.

Prosecution Exhibit 1, a stipulation of fact, says in pertinent part:

9. On or about 29 October 1997, while breaking into Gunner's Mate First Class [GM1] Edgar Bartley's vehicle in the Fire Station Parking lot of Naval Station, Mayport, the accused set off the car alarm. MA2 Richard Howard and MA3 Kevin Jimenez, Naval Station Mayport base detectives, were driving in the area of the Naval Station Mayport Fire Station when they saw the headlights flashing on GM1 Bartley's vehicle. As the detectives pulled closer to GM1 Bartley's vehicle, they noticed another car next to it. The detectives then turned on their emergency lights. The accused saw the base security vehicle coming towards him. The accused then ran, and entered his vehicle. The accused exited the fire station parking lot and drove very rapidly toward the main gate. The accused saw the emergency lights of the base security vehicle flashing behind him. As the security vehicle pulled closer to him, the accused accelerated in an attempt to avoid apprehension by the base detectives. A high speed police pursuit then ensued down Main Street, Naval Station, Mayport, Florida. When the accused entered the intersection of Massey Avenue and Main Street, the traffic light in the left-hand lane was red with cars stopped in front of him. In an attempt to avoid stopping for the red light and being apprehended, the accused, traveling approximately 40 to 50 miles per hour, swerved into the lane of oncoming traffic causing traffic in that lane to swerve off of the road to avoid being hit by the accused. The accused then proceeded to travel at speeds reaching approximately 70 miles per hour toward the Naval Station Mayport, Florida main gate. When almost at the main gate, the accused observed another base security vehicle at the gate about to join the chase. The accused knew and understood that he could not avoid police apprehension, and decided to stop his vehicle and surrender.

10. The accused believed and understood that he was being pursued for apprehension by the base detectives because of his action of breaking into the automobile of Gunner's Mate First Class Edgar Bartley. The accused also knew and understood that he was being pursued for apprehension by the base detectives because of his reckless high speed driving while on Main Street, Naval Station, Mayport, Florida. The accused believed and understood that the base detectives were pursuing him to stop his vehicle and place him into physical custody because of [sic] he broke into the automobile of GM1 Bartley. The accused believed and understood that the base detectives were pursuing him to stop his vehicle and place him into physical custody because he was also driving recklessly and at high speeds on Main Street, Naval Station, Mayport, Florida.

11. The accused knew that the vehicle chasing him was a law enforcement vehicle driven by law enforcement officers because he saw the flashing emergency lights and it was clearly identifiable as a law enforcement vehicle. The accused further knew

and understood that the law enforcement officers pursuing him had the authority and power to apprehend him.

12. The accused freely admits that his conduct was wrong, and that he had no legal excuse or justification for his illegal activities.

The military judge at appellant's court-martial approved his request for a trial by judge alone. He then explained what occurred during a conference held pursuant to RCM 802, Manual for Courts–Martial, United States (1998 ed.):

> We discussed the fact that what is being charged under Charge I is fleeing apprehension, which is a change to Article 95 of the UCMJ. It changed in 1996 some time. It is applicable to Article 95 offenses that would have taken place at the time alleged in this charge sheet, and as such the only issue was what would be the maximum punishment if the accused was found guilty for that. We have determined the maximum punishment is a DD and one year for that particular offense, for the fleeing apprehension offense. I'm sorry, a bad-conduct discharge and one year, not a DD, a bad-conduct discharge and one year confinement for that offense. Since the current 1995 Manual for Courts–Martial bound edition does not have that, we had to look it up from other sources.

(R. 11–12.) He then secured both counsel's agreement that that was "the extent of the 802 conference." (R. 12.)

Article 95 of the Uniform Code of Military Justice, prior to 1996, stated:

**Resistance, breach of arrest, and escape**

Any person subject to this chapter who resists apprehension or breaks arrest or who escapes from custody or confinement shall be punished as a court-martial may direct.

As amended in 1996 it now states:

**Resistance, flight, breach of arrest, and escape**

Any person subject to this chapter who—

(1) resists apprehension;

(2) *flees from apprehension;*

(3) breaks arrest; or

(4) escapes from custody or confinement; shall be punished as a court-martial may direct.

(Emphasis added.)

The 1996 amendment of Article 95 of the Code was part of the National Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104–106, Title XI, § 1112, 110 Stat. 461 (1996); *see also* H.R.Conf.Rep. No. 450, 104th Cong., 2d Sess. at 852 (1996), *reprinted in* 1996 U.S.C.C.A.N. 378. It was signed into law by the President on February 10, 1996. 110 Stat. 703 (1996). This legislation contained no language indicating an effective date for the particular amendment to Article 95 of the Code.

On May 27, 1998, the President signed Executive Order No. 13,086, 63 Fed.Reg. 30,-065, 30,086 (1998), *reprinted in* Manual, *supra* at A25–36 through A25–52, amending the Manual for Courts–Martial to reflect, among other things, the amendments to the Code contained in the National Defense Authorization Act for Fiscal Year 1996. Executive Order No. 13,086 provides that the amendments to the Manual "shall take effect on May 27, 1998," and then states in pertinent part: "Nothing contained in these amendments shall be construed to make punishable any act done or omitted prior to June 26, 1998, which was not punishable when done or omitted."

Appellant claims that the effective date of the amended Article 95 of the Code was June 26, 1998, as provided by the President in Executive Order No. 13,086, which amended provisions in the Manual for Courts–Martial. He bases his argument on the lack of a specified effective date in the legislation amending Article 95 of the Code, the President's statement in Executive Order No. 13,-086, and *United States v. McCurry*, No. NMCM 97–01809, 1998 WL 918616 (N.M.Ct. Crim.App. December 4, 1998)(unpublished).*

---

* The Court of Criminal Appeals said: "Although Article 95, UCMJ, 10 USC § 895, has been amended so that it now makes flight from apprehension a criminal offense, the amended article does not apply to acts occurring prior to 26 June 1998. In this case, the appellant took flight from

Appellant asserts that Congress delegated to the President the power to state an effective date and the President chose June 26, 1998, as the effective date. We disagree with appellant's argument.

The Supreme Court has said: "It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon–Peretz v. United States*, 498 U.S. at 404, 111 S.Ct. 840. The legislation that amends Article 95 of the Code contained no effective date; therefore, it took effect on February 10, 1996, the day the President signed the legislation. *See generally* 2 *Sutherland on Statutory Construction* § 33.06 at 12 (C. Sands 4th rev. ed.1986).

We must next turn to the effect of Executive Order No. 13,086 on the prosecution of appellant's offense. We have continually reiterated that the Uniform Code of Military Justice controls when an executive order conflicts with part of that Code. *See generally United States v. Gonzalez*, 42 MJ 469, 474 (1995); *United States v. Mance*, 26 MJ 244, 252 (1988). Here, however, we do not believe that there is any conflict between Executive Order No. 13,086 and the amended Article 95 of the Code. While the President can provide safeguards to servicemembers that go beyond the Constitution and the Code, *see,*

*e.g., United States v. Manuel*, 43 MJ 282, 286 (1995), we do not construe Executive Order No. 13,086 as doing so. It simply does not grant appellant any additional rights with respect to delayed application of the above-noted amendment to Article 95 of the Code. *Compare United States v. Davis*, 47 MJ 484, 486 (1998), *with Davis*, 47 MJ at 488 (Sullivan, J., dissenting).

On its face, Executive Order No. 13,086 allows for the punishment of appellant's conduct. The language at issue in the Executive Order actually states "Nothing contained in these amendments shall be construed to make punishable any act done or omitted prior to June 26, 1998, *which was not punishable when done or omitted.*" (Emphasis added.) However, as noted above, Article 95, a provision of the Uniform Code of Military Justice and the United States Code, was previously amended in 1996 and made punishable, at that time, flight from apprehension. Accordingly, under this congressional statute, appellant's conduct was clearly "punishable when done" in 1997 and its prosecution was not abrogated by this Manual provision.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

apprehension on 13 May 1997. Thus, we set aside the finding of guilty to resisting apprehension, and dismiss Charge IV and its single specification." Unpub. op. at 2.