UNITED STATES

v.

William C. TANNER, Seaman
Recruit (E–1), U.S. Navy.

NMCCA 200301120.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Decided 21 June 2005.

Lt Colin Kisor, JAGC, USNR, Appellate Defense Counsel.

Maj Raymond Beal II, USMC, Appellate Government Counsel.

Before DORMAN, PRICE, and HARRIS, Appellate Military Judges.

HARRIS, Judge:

A military judge sitting as a general court-martial convicted the appellant, in accordance with his pleas, of rape of a child under the age of 16 years, two specifications of forcible sodomy, on divers occasions, of a child under the age of 16 years, and committing indecent acts, on divers occasions, with a child under the age of 16 years. All of the offenses involved the appellant's 10–year–old daughter. The appellant's offenses violated Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 934. On 7 May 2002, the military judge sentenced the appellant to confinement for 18 years and a dishonorable discharge. On 23 April 2003, the convening authority approved the adjudged sentence and, in accordance with the terms of a pretrial agreement, suspended confinement in excess of 90 months for 90 months from the date of trial.

We have carefully examined the record of trial, the appellant's original assignment of error [1] and two supplemental assignments of

1. Assignment of Error:
THE [APPELLANT'S] INDIVIDUAL MILITARY COUNSEL AND THE MILITARY JUDGE BOTH IMPROPERLY ADVISED [THE] APPELLANT THAT THE PUNISH- MENT OF LIFE WITHOUT ELIGIBILITY FOR PAROLE WAS AUTHORIZED IN HIS CASE, THEREBY INDUCING HIM TO PLEAD GUILTY.

error,[2] the Government's answers, and the appellant's replies.[3] We conclude that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Life Without Eligibility for Parole as an Authorized Punishment

■ In the appellant's original assignment of error, submitted under *United States v. Grostefon,* 12 M.J. 431, 436–37 (C.M.A.1982), he asserts that his individual military counsel and the military judge both improperly advised him that the punishment of life without eligibility for parole was authorized in his case, thereby inducing him to plead guilty. Appellant's Brief of 12 May 2004 at 2. The appellant avers that, given his material misunderstanding of the maximum punishment that he faced when he decided whether to contest the charges, this court should set aside the findings and sentence. We disagree.

The Constitution vests in Congress the authority "[t]o make Rules for the Government and Regulation of the land and naval Forces." U.S. CONST. art. I, § 8, cl. 14. Congress, in effect, can legislate the structure of the military justice system. This includes the authority to establish what sentences can be adjudged for specific crimes. *See Loving v. United States,* 517 U.S. 748, 767, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996). Accordingly, when Congress adopted Article 120, UCMJ, 10 U.S.C. § 920, it provided the following authorized sentence for the offense of rape: "[D]eath or such other punishment as a court-martial may direct." Art. 120(a), UCMJ. Congress has also delegated to the President the authority to specify, within statutory limits, the maximum punishment for crimes prosecuted by courts-martial. *See Loving,* 517 U.S. at 769, 116 S.Ct. 1737. At the time of the commission of the appellant's crimes, the President had prescribed that military personnel convicted of rape under Article 120, UCMJ, could be sentenced to "[d]eath or such other punishment as a court-martial may direct[,]" which would necessarily include confinement for life.[4] MANUAL FOR COURTS–MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 45e(1).

In 1997, Congress modified its delegation of authority, providing that for *any* crime where the President has prescribed confinement for life as a possible sentence, courts-martial automatically have the option of adjudging a sentence of confinement for life without eligibility for parole (LWOP). National Defense Authorization Act for Fiscal Year 1998, Pub.L. No. 105–85, § 581, 111 Stat. 1629, 1759 (1997)(codified as 10 U.S.C. § 856a (2000)). Although the President signed this provision into law on 18 November 1997, he did not amend the Manual for Courts–Martial to incorporate LWOP until 11 April 2002. *See United States v. Ronghi,* 60 M.J. 83, 83 (C.A.A.F.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 639, 160 L.Ed.2d 481 (2004). Nonetheless, " 'absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment.' " *United States v. Pritt,* 54 M.J. 47, 50 (C.A.A.F.2000)(quoting *Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991)). We also note that the 2002 executive order amending the Manual for Courts–Martial expressly recognized LWOP's availability as an authorized sentence for offenses committed after 18 November 1997. *Ronghi,* 60 M.J. at 85.

---

**2.** Supplemental Assignments of Error:
I. [THE] APPELLANT'S SENTENCE IS INVALID BECAUSE A PREVIOUS [GENERAL] COURT–MARTIAL CONVICTION WHICH WAS ADMITTED AS EVIDENCE IN AGGRAVATION HAS BEEN SET ASIDE BY THIS COURT.
II. [THE] APPELLANT IS BEING DENIED SPEEDY POST[-]TRIAL AND APPELLATE REVIEW OF HIS CONVICTION.

**3.** On motion, this court granted the appellant's request for expedited review of his case. N.M.Ct.Crim.App. Order of 13 Dec 2004.

**4.** Death may be adjudged only in accordance with RULE FOR COURTS-MARTIAL 1004, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.)(Capital cases). R.C.M. 1003(b)(10). The death penalty may not be adjudged if it is not specifically authorized for the offense by the UCMJ and Part IV of the MCM, nor in any case referred as noncapital. R.C.M. 201(f)(1)(A)(iii).

The real issue in the appellant's case is whether LWOP was an authorized court-martial punishment for the crime of rape during the period between the enactment of the LWOP statute and the Manual for Courts–Martial's 2002 revision. We conclude that when Congress adopted Article 56a, UCMJ, it plainly intended to authorize LWOP as an available sentence for the offense of rape committed after 18 November 1997, whether referred capital or noncapital. Thus, absent some other statutory provision limiting LWOP's availability, we conclude that it was an authorized sentence when the appellant raped his 10–year–old daughter during or about January 2000. As such, we decline to grant relief.

### Evidence in Aggravation: Prior Court–Martial Conviction Set Aside

In the appellant's first supplemental assignment of error, he asserts that his sentence is invalid because this court set aside a previous general court-martial conviction that was admitted as evidence in aggravation at the general court-martial now before us. The appellant avers that this court should set aside the sentence and order a rehearing. Alternatively, the appellant avers that this court should approve a sentence including only 42 months confinement with credit for the 139 days of pretrial confinement and 472(sic) days of post-trial confinement that he served following his first court-martial before it was set aside. We disagree.

The convening authority approved the appellant's sentence to confinement from his 20 March 2001 court-martial conviction on 9 January 2002. That approved sentence to confinement was interrupted on 7 May 2002, the date of the appellant's second court-martial conviction, which also included a sentence to confinement. As such, the appellant served 413 days of post-trial confinement from his first court-martial conviction prior to its interruption by the commencement of his sentence to confinement from his second court-martial conviction.

At his first court-martial, the appellant was a Gas Turbine Systems Technician First Class (E–6). In accordance with his pleas, the appellant was convicted at that court-martial of attempted carnal knowledge, sodomy, and indecent acts, all offenses involving his 15–year–old step-daughter, and adultery with an adult female, in violation of Articles 80, 125, and 134, UCMJ, 10 U.S.C. §§ 880, 925, and 934. Prosecution Exhibit 4.[5] The military judge, sitting alone, sentenced the appellant to confinement for 42 months, reduction to pay grade E–1, and a dishonorable discharge. *Id.* After the convening authority approved the appellant's first court-martial sentence, in an attempt to comply with the terms of a pretrial agreement, the convening authority ordered that automatic forfeitures be waived for a period of 6 months from the date of his action. *Id.* The Government, however, failed to timely comply with the terms of the pretrial agreement requiring deferral of any automatic forfeiture of pay and allowances prior to the convening authority's action and waiver of automatic forfeitures of pay and allowances for 6 months from the date of the convening authority's action.[6]

During sentencing in the instant case, the Government introduced, and the military judge admitted and considered without defense objection, the court-martial promulgating order for the appellant's previous court-martial conviction. Record at 74–75; Prosecution Exhibit 4; *see* RULE FOR COURTS–MARTIAL 1001(b)(3), MANUAL FOR COURTS–MARTIAL, UNITED STATES (2000 ed.). The Government also attempted to have a transcript and selected exhibits from the appellant's previous court-martial providence inquiry, Prosecution Exhibit 3, admitted in aggravation "to explain the nature of the charges." Record at 74, 77. The appellant objected to the admission of Prosecution Exhibit 3 as irrelevant, cumulative, and improper evidence in aggravation. *Id.* at 75–76. The military judge sustained the appellant's objection "[a]s to the facts and circumstances surrounding the previous guilty

---

5. General Court–Martial Order Number 01–02 of 9 Jan 2002 (Promulgation Order).

6. An allotment to the appellant's wife did not start on time, and she was forced to wait five months before the forfeited pay and allowances were deposited into her account.

plea and the previous conviction...." *Id.* at 78.

On 25 May 2004, this court set aside the findings and sentence and authorized a rehearing in the appellant's previous court-martial.[7] *United States v. Tanner*, No. 200200487, unpublished op. (N.M.Ct.Crim. App. 25 May 2004)(per curiam)(concluding that the appellant must be afforded the opportunity to withdraw his guilty pleas). On remand of the appellant's first court-martial, the Government conceded the error and made an offer to reduce the appellant's sentence to confinement by 6 months, which the appellant rejected. The convening authority subsequently elected not to retry the appellant on the previous court-martial's original charges.

The appellant avers that he "was prejudiced by the receipt into evidence of the conviction which has now been set aside." Appellant's Supplemental Assignments of Error Brief of 2 Dec 2004 at 2. We hold that the military judge's admission of the appellant's prior court-martial conviction that was subsequently reversed was a constitutional error, but that the error was harmless beyond a reasonable doubt.

In *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the Supreme Court held that a trial judge's consideration of two prior convictions later found to be constitutionally invalid meant that the appellant's sentence was "founded at least in part upon misinformation of constitutional magnitude." The Court noted that the trial judge gave "specific consideration" to the appellant's prior convictions in determining the sentence and concluded that the sentence "might have been different" had the trial judge known that the convictions were constitutionally invalid. *Id.* at 447–48, 92 S.Ct. 589. The Court then affirmed the judgment of the Ninth Circuit Court of Appeals remanding the case for resentencing. *Id.* at 449, 92 S.Ct. 589. Further, our superior court adopted the "might have been different" standard from *Tucker* in deciding whether to grant relief when a sentence is tainted by

constitutional error. *See United States v. Plys*, 48 C.M.R. 1003, 1973 WL 14965 (C.M.A.1973)(denying relief where it did not appear that the sentence might have been different had the trial judge known the prior conviction was constitutionally invalid); *United States v. Gibson*, 46 C.M.R. 344, 1973 WL 14546 (C.M.A.1973)(denying relief where the court was convinced by the lenient sentence that evidence of constitutionally invalid convictions had not influenced the members).

The plain language of R.C.M. 1001(b)(3)(B) is consistent with certain reasoning used in *Tucker.* The rule states that the pendency of an appeal does not render evidence of a prior conviction inadmissible for sentencing purposes. R.C.M. 1001(b)(3)(B). The trial court is also free to consider the fact that an appeal is pending. *Id.* Where a conviction considered in aggravation is later set aside on non-constitutional grounds, we are constrained from setting aside a sentence for error, unless the non-constitutional error materially prejudices the substantial rights of the appellant. *See United States v. Powell*, 49 M.J. 460, 464 (C.A.A.F.1998)(citing Art. 59(a), UCMJ). Furthermore, the later reversal on constitutional grounds of a prior conviction considered in aggravation would not always invalidate the sentence. Only the taint of constitutional error not harmless beyond a reasonable doubt would invalidate the sentence. *See Tucker*, 404 U.S. at 447–48, 92 S.Ct. 589.

A court-martial sentence therefore should not be set aside if we can confidently conclude, after reviewing the whole record, that any constitutional error was harmless beyond a reasonable doubt. *See United States v. Bins*, 43 M.J. 79, 86 (C.A.A.F.1995)(concluding that the test for harmlessness is "whether the error had or reasonably may have had an effect upon the [decision]"); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)(concluding that "an otherwise valid conviction should not be set

---

7. It appears that the appellant miscomputed the total post-trial time from his first court-martial conviction on 20 March 2001 until this court overturned it on 25 May 2004 as 472 days. This court's computation of said time is 1,163 days.

aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt"). The test for determining whether constitutional error is harmless during sentencing is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the sentence adjudged. *See Bins,* 43 M.J. at 86. Our standard of review for harmless error is *de novo. United States v. George,* 52 M.J. 259, 261 (C.A.A.F.2000)(citing *Rushen v. Spain,* 464 U.S. 114, 120, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983)(concluding that whether a constitutional error was harmless is a question of law)).

■ The appellant's first general court-martial conviction was constitutionally infirm because the Government's post-trial failure to timely comply with a material term of the pretrial agreement thereby rendered the appellant's guilty pleas legally involuntary as a violation of his Fifth Amendment due process rights. *United States v. Perron,* 58 M.J. 78, 82 (C.A.A.F.2003)(citing *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)); *see also Correale v. United States,* 479 F.2d 944, 947 (1st Cir.1973)(quoting *Santobello,* 404 U.S. at 262, 92 S.Ct. 495). Our superior court has found that "[i]t is fundamental to a knowing and intelligent plea that where an accused pleads guilty in reliance on promises made by the Government in a pretrial agreement, the voluntariness of that plea depends on the fulfillment of those promises by the Government." *Perron,* 58 M.J. at 82 (citing *Santobello,* 404 U.S. at 262, 92 S.Ct. 495).

In the appellant's case, he had no objection to evidence of his prior conviction, Prosecution Exhibit 4, being considered by the military judge on sentencing, even though he knew that the Government had not lived up to each term of that court-martial's pretrial agreement. Furthermore, he used his prior conviction as the most significant part of his overall sentencing strategy. To justify a more lenient sentence to confinement, the appellant argued that: (1) the offenses for both courts-martial occurred concurrently; (2) he has made substantial progress in his sexual offender treatment program; and (3)

he has significant potential for rehabilitation. The appellant even introduced evidence substantiating the misconduct that was made the focus of his first court-martial. *See* Defense Exhibits SS–UU, WW, YY–ZZ; Record at 104 (cross-examining Government witness, the appellant focuses blame on himself for the crimes that resulted in his first conviction). The appellant presented evidence of his progress in a sexual offender treatment program. Defense Exhibit BBB. The appellant also presented evidence from each victim and their mother (his spouse), and their youngest daughter, all of whom supported his return to the family as soon as possible. Defense Exhibits VV–YY.

Despite this evidence, the record does not indicate that the military judge gave specific consideration or even paid explicit attention to the appellant's first court-martial convictions for child sexual abuse and adultery in deciding his sentence at the second court-martial. *See* Record at 112 (stating that "[the appellant] will only be sentenced for the crimes of which he has committed ...."). While the military judge spoke in reference to the possible earlier enabling conduct of the appellant's spouse and her initial non-belief as to the allegations, his statement clearly evidences the military judge's state of mind in sentencing the appellant focused only on the crimes of which the appellant now stands convicted. *See id.* at 111–12.

Further, while the appellant's *conviction* at his first court-martial was constitutionally infirm, evidence of the facts and circumstances underlying his conviction would have been admissible at his second trial as evidence in aggravation under R.C.M. 1001(b)(4). R.C.M. 1001(b)(4) governs what evidence the Government may present as evidence in aggravation during the presentencing phase of courts-martial. *United States v. Nourse,* 55 M.J. 229, 231 (C.A.A.F. 2001). The Government "may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." R.C.M. 1001(b)(4).

With regard to the "directly relating to or resulting from" language in the rule, our superior court has concluded that this lan-

guage encompasses "evidence of other crimes which are part of a 'continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs within the military community.'" *Nourse,* 55 M.J. at 231 (quoting *United States v. Mullens,* 29 M.J. 398, 400 (C.M.A.1990)(concluding that a "similar situs within the military community" includes the "servicemember's home" and, therefore, evidence of uncharged indecent liberties the appellant took with his children was admissible under R.C.M. 1001(b)(4) during presentencing for convictions of sodomy and indecent acts with his children)); *see also United States v. Shupe,* 36 M.J. 431, 436 (C.M.A.1993)(concluding that evidence of drug transactions not embraced by the guilty plea were admissible as aggravating circumstances to show the "continuous nature of the charged conduct and its full impact on the military community"); *United States v. Ross,* 34 M.J. 183, 187 (C.M.A.1992)(concluding that evidence that the accused had altered test scores on occasions other than those for which he was convicted was admissible to show the "continuous nature of the charged conduct and its full impact on the military community"); *United States v. Wingart,* 27 M.J. 128, 136 (C.M.A.1988)(concluding that it was error to admit evidence of an accused's uncharged sexual misconduct not related to his charged offenses by time, location, or victim, as an aggravating circumstance under R.C.M. 1001(b)(4). Evidence of this nature appropriately may be considered as an aggravating circumstance because it reflects the true impact of crimes upon the victims. *Mullens,* 29 M.J. at 400.

The present case is the appellant's second general court-martial for sexual misconduct involving one of his children in their home. Further, as the appellant himself argued, the periods of time during which the appellant committed these offenses on both of his victims in their home overlap. The military judge, after considering Prosecution Exhibit 4, excluded Prosecution Exhibit 3. Even though the trial counsel did not specifically offer Prosecution Exhibit 3 (or Prosecution Exhibit 4) for the purpose of evidence in aggravation under R.C.M. 1001(b)(4), "there would be little point in setting aside the sentence if the challenged evidence clearly would be admissible at a rehearing." *Wingart,* 27 M.J. at 134.

Accordingly, we conclude that the military judge could have admitted evidence of the underlying "facts and circumstances" surrounding the appellant's other child sexual offenses occurring in the home as they were directly related to the instant charges and part of the appellant's concurrent and ongoing continuous course of conduct involving his children.[8] This evidence was relevant, not cumulative, and properly before the court under R.C.M. 1001(b)(4). *See generally United States v. Vickers,* 13 M.J. 403, 404 (C.M.A.1982)(citing Paragraph 75b(3) of the MCM, 1969) (Revised ed.).[9]

Furthermore, the appellant's misconduct for which he was convicted at his first court-martial, except for the adultery misconduct, is also the same type of evidence of similar crimes in child molestation cases that Congress mandated "is admissible and may be considered for its bearing on any matter to which it is relevant." MILITARY RULE OF EVIDENCE 414(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.);[10] *see United States v. McDonald,* 53 M.J. 593, 595 (N.M.Ct.Crim.App.2000)(concluding before findings that under MIL. R. EVID. 414, evidence of similar crimes in child molestation cases is admissible and may be considered on *any matter* to which it is relevant, subject to the balancing test contained in MIL. R. EVID. 403[11]), *aff'd,* 55 M.J. 173 (C.A.A.F.2001); *see*

---

8. We note that, except for that portion dealing with adultery, Prosecution Exhibit 3 describes the facts and circumstances of these other directly related offenses.

9. Paragraph 75b(3), MCM, 1969 was superseded by the adoption of R.C.M. 1001(b)(4), MCM, 1984.

10. MIL. R. EVID. 414(a) states that "[i]n a court-martial in which the accused is charged with an

offense of child molestation, evidence of the accused's commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant."

11. MIL. R. EVID. 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of

*also United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir.1997)(recognizing before findings "the strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible . . ."); *United States v. James*, 60 M.J. 870, 872–73 (A.F.Ct.Crim.App.2005)(concluding before findings that MIL. R. EVID. 414 does not limit admissibility of evidence of similar crimes in child molestation cases).

In child molestation cases prosecuted in federal courts, as in trials by courts-martial, evidence of prior convictions involving child molestation is without question admissible during presentencing. *See* FED.R.CRIM.P. 32 (Sentencing and Judgment)(applying United States Sentencing Guidelines enhancements); R.C.M. 1001(b)(3). From the plain reading of both FED.R.EVID. 414(a) and MIL. R. EVID. 414(a), it is equally clear, and we conclude, that Congress intended for evidence of similar crimes involving child molestation to be admissible also during the presentencing phase of a trial, not just on the merits. However, while congressional intent has clearly been given effect within the federal judiciary by FED.R.CRIM.P. 32, the President has not explicitly implemented Congress' intent by amending R.C.M. 1001(b)(4), or (b)(5) for that matter.

In *United States v. Davis*, 47 M.J. 484 (C.A.A.F.1998), the Court of Appeals for the Armed Forces succinctly explained the military's hierarchical sources of rights. "These sources are the Constitution of the United States; Federal Statutes, including the [UCMJ]; Executive Orders containing the Military Rules of Evidence; Department of Defense Directives; service directives; and Federal common law." *Davis*, 47 M.J. at 485 (citing *United States v. Lopez*, 35 M.J. 35, 39 (C.M.A.1992)). In *Lopez*, our superior court concluded that "[n]ormal rules of statutory construction provide that the highest source authority will be paramount, unless a lower source creates rules that are constitutional and provide greater rights for the individual. . . ." *Lopez*, 35 M.J. at 39. Pursuant to

Article 36(a), UCMJ, 10 U.S.C. § 836(a), the President is given the express authority to promulgate both the Rules for Courts–Martial and the Military Rules of Evidence through the Manual for Courts–Martial. The President does this by executive order. *Davis*, 47 M.J. at 486.

The appellant's pleas at his first general court-martial were found to be involuntary *ex post facto* and, thus, in violation of his rights to constitutional due process, thereby making his conviction infirm. That, however, does not mean that other forms of evidence of the other illegal acts evidencing the appellant's concurrent course of illegal conduct committed on his 15–year–old step-daughter are not sufficiently reliable, or not relevant, or not admissible at his court-martial. So long as during sentencing the court-martial did not rely on misinformation pertaining to evidence of other crimes, the court's discretion, subject to the limitations of R.C.M. 1001(b),[12] applicable rules of evidence, and applicable case law, is largely unlimited as to the source from which the aggravating evidence may come, whether or not the evidence was admissible at trial on the merits. *See generally United States v. Larson*, 112 F.3d 600, 605–06 (2nd Cir.1997)(internal citations omitted); *see also Vickers*, 13 M.J. at 404.

A problem of first impression facing this court in the appellant's case is how to reconcile the apparent inconsistency between MIL. R. EVID. 414(a) and R.C.M. 1001(b). Both FED.R.EVID. 414(a) and MIL. R. EVID. 414(a) reflect the clear legislative intent that evidence of similar crimes in child molestation cases shall normally be admissible and considered for its bearing on any matter to which it is relevant. Both federal and military courts now routinely admit this evidence during trial on the merits after conducting a balancing test under FED.R.EVID. 403 or MIL. R. EVID. 403, respectively. However, this court has not found any published federal or military cases where evidence of similar crimes in child molestation cases was either

---

undue delay, waste of time, or needless presentation of cumulative evidence."

**12.** Per R.C.M. 1001(b), these matters may include: (1) Service data from the charge sheet;

(2) Personal data and character of prior service of the accused; (3) Evidence of prior convictions of the accused; (4) Evidence in aggravation; and (5) Evidence of rehabilitative potential of the accused.

offered and admitted or offered but excluded under FED.R.EVID. 414(a) or MIL. R. EVID. 414(a) during the presentencing phase of an appellant's trial or court-martial.

 We, nonetheless, conclude that given the clear intent of Congress, evidence of similar crimes in child molestation cases offered under MIL. R. EVID. 414(a) during the presentencing phase of an appellant's court-martial will normally be admissible under R.C.M. 1001(b)(4), subject to a balancing conducted under MIL. R. EVID. 403, and the notification requirements of MIL. R. EVID. 414(a). This rule applies without regard to whether the appellant pled guilty or whether any evidence was presented on the merits. *See* MIL. R. EVID. 414(a) and 403; *see generally Vickers*, 13 M.J. at 404. We further conclude that, if a finding of guilty of an offense in a child molestation case is based upon a plea of guilty, and available and admissible evidence as to any aggravating circumstances which include evidence of similar child molestation crimes was not introduced before the findings, the prosecution may introduce that evidence after the findings are announced, subject to a balancing conducted under MIL. R. EVID. 403. *See generally Vickers*, 13 M.J. at 404. If this were not the case, an appellant could thwart explicit congressional intent simply by entering a plea of guilty to the charged offenses, thereby suppressing the very evidence that Congress determined should normally be admissible in child molestation cases. *See LeCompte*, 131 F.3d at 769. In the appellant's case, we therefore conclude that despite the appellant's first court-martial conviction becoming constitutionally infirm, evidence in an admissible form of the appellant's other crimes of child molestation was relevant and admissible.

Additionally, because the relevance of the misconduct contained in Prosecution Exhibits 3 and 4 is the underlying misconduct itself, not the conviction, the evidence of the uncharged misconduct is still admissible to show "the true impact of the charged offenses on the members of his family." *Mullens*, 29 M.J. at 400. Since the evidence was admissible for that purpose, we are convinced beyond a reasonable doubt that the sentence would not have been any different absent the military judge's consideration of the appellant's prior conviction, especially in light of the lenient sentence adjudged for the rape, repeated forcible sodomies, and indecent acts committed upon the appellant's 10-year-old daughter. Therefore, we conclude that the constitutional error in the admission of the appellant's prior conviction was harmless beyond a reasonable doubt. The fact that the appellant boot-strapped punishment and rehabilitative efforts from his prior conviction as a significant part of his overall sentencing strategy further lends itself to the conclusion that the error was harmless beyond a reasonable doubt.

Finally, it is this court's opinion that we lack jurisdiction to grant the appellant's request for credit in this court-martial for the 139 days of pretrial confinement and 413 days of post-trial confinement that he served for his first court-martial conviction before it was interrupted by his second court-martial conviction. *See* Arts. 66(c) and 66(d), UCMJ. We, therefore, decline to grant relief.

### Post–Trial Delay

In the appellant's second supplemental assignment of error, he asserts that he is being denied speedy post-trial and appellate review. The appellant avers that this court should exercise its authority under Article 66(c), UCMJ, and grant relief in his case in the form of reduced confinement. We disagree.

 Every military appellant has a statutory and due process right to timely appellate review. *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 37–38 (C.A.A.F.2003)(concluding that an "[appellant's] right to a full and fair review of his findings and sentence under Article 66[ (c), UCMJ,] embodies a concomitant right to have that review conducted in a timely fashion. Additionally, [an appellant] has a constitutional right to a timely review guaranteed him under the Due Process Clause."). We are also cognizant of this court's power under Article 66(c), UCMJ, to grant sentence relief for excessive post-trial delay even in the absence of actual prejudice. *See United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F.

2002). Where post-trial delay is determined to be excessive and unexplained, we must decide whether the unexplained delay is "facially unreasonable." *See United States v. Jones,* 61 M.J. 80, 83 (C.A.A.F.2005). If we find unexplained delay to be facially unreasonable, this triggers a due process review under *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See id.* at 83 (applying the following factors to determine whether the appellant's due process rights have been violated: (1) length of the delay; (2) reasons for the delay; (3) the appellant's assertion of the right to timely appellate review; and (4) the resulting prejudice to the appellant from the delay). In *Jones,* the Court of Appeals for the Armed Forces, after applying the four *Barker v. Wingo* due process review factors to the timeliness of the post-trial and appellate processing of the appellant's case, found that the unreasonably lengthy and unexplained delay prejudiced the appellant as a matter of law. *Id.* at 85–86. Key to our superior court's finding of prejudice to the appellant was their determination that the appellant demonstrated "ongoing prejudice." *Id.* at 84–85.

The *Jones* court concluded that where the length of delay is so short that it is determined to be facially reasonable, the rest of the analysis under *Barker v. Wingo* is unnecessary. *Id.* at 83 (quoting *Toohey v. United States,* 60 M.J. 100, 102 (C.A.A.F. 2004)). If we conclude that the length of the delay is "facially unreasonable," we must balance the length of the delay with the other three factors. *Id.* Nonetheless, where the length of delay is determined to be facially unreasonable, the reasons for the delay, or the absence of demand for speedy review, or the absence of prejudice to an appellant can mitigate the unreasonableness of the delay under the particular circumstances of that appellant's case. Only where the delay is determined to be unreasonable would there be a presumption of prejudice, even in the absence of actual prejudice. Review of the appellant's case leads us to conclude that the appellant's case is clearly not unreasonable as to warrant any such presumption of prejudice.

The delay between the appellant's 7 May 2002 sentencing and the convening authority taking his action on 23 April 2003 was 351 days. The appellant's case was then docketed with this court for appellate review just 42 days later on 4 June 2003. After the appellant's appellate defense counsel filed a final reply brief in the case on 18 February 2005, the appellant's case became ready for this court's expedited review on 25 February 2005.

Assuming the unexplained post-trial delay in this case is excessive, which we do not believe, we do not find any prejudice or other harm to the appellant resulting from the delay, nor do we conclude that it affects the "findings and sentence [that] *'should be approved,'* based on all the facts and circumstances reflected in the record...." *Tardif,* 57 M.J. at 224 (emphasis added). The convening authority immediately considered appellant's request for clemency upon receipt and immediately acted on it. Moreover, the appellant never complained to the military judge, staff judge advocate, or convening authority about the delay. Further, in his request for clemency, the appellant advanced to the convening authority that he took steps to utilize the time prior to the convening authority's action to make progress in his sexual offender treatment program to rehabilitate himself. As such, we do not find the 351–day unexplained delay between the appellant's trial and the convening authority's action to be excessive. We also do not find the 42 days after the convening authority's action that it took to docket the appellant's case with this court for appellate review to be excessive. Nor do we find the time from docketing on 4 June 2003 to this court's opinion to be excessive. Despite the appellant's complaint that the length of time is sufficient to warrant relief, we do not find a lack of diligence in the post-trial processing of this case. The appellant has not alleged, nor do we find, any indication of deliberate or malicious intent as a reason for the delay in this case. *See United States v. Toohey,* 60 M.J. 703, 708 (N.M.Ct.Crim.App.2004).

While we do not condone lengthy delay in any case, we conclude that there is nothing so extraordinary about the appellant's case

that merits the exercise of our powers under Article 66(c), UCMJ. *Toohey,* 60 M.J. at 708. We also conclude that there has been no due process violation due to the post-trial delay. *See Jones,* at 85–86; *Toohey,* 60 M.J. at 103; *Diaz,* 59 M.J. at 37; *Tardif,* 57 M.J. at 224; *see also United States v. Diaz,* 61 M.J. 594 (N.M.Ct.Crim.App.2005). Therefore, we decline to grant relief.

### Conclusion

Accordingly, we affirm the findings and the sentence, as approved by the convening authority.

Chief Judge DORMAN concurs.

Senior Judge PRICE (concurring in part and in the result).

I concur with the majority opinion in its analysis and conclusions as to maximum punishment and post-trial/appellate delay. As to the invalid prior conviction, I concur in the result and part of the analysis. However, I must respectfully disagree with other parts of the analysis.

The majority opinion properly emphasizes the fact that the defense used the now-invalid prior conviction as an integral part of its strategy in the presentencing hearing. Although the defense objected to the admission of the providence inquiry from the prior court-martial, the defense later offered evidence that tacitly admitted, at least in general terms, the sexual misconduct described in the providence inquiry. For me, this unusual fact is a critical case-specific matter to consider in deciding that any error committed by the military judge was harmless beyond a reasonable doubt.

I view RULE FOR COURTS-MARTIAL 1001(b)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.), as providing the only legally sound theory of admissibility for the facts underlying the prior conviction. As the majority opinion states, several cases from our superior court have taken a relatively expansive interpretation of the "directly related to or resulting from" language in that rule. The case that comes closest to the instant scenario is *United States v. Mullens,* 29 M.J. 398 (C.M.A.1990). That case addressed the admission of uncharged misconduct involving child-victims that were the subject of the charged offenses. In affirming the sentence adjudged by members, the court observed:

> Clearly, the uncharged misconduct delineated in this stipulation was directly related to the conduct for which appellant was found guilty. The stipulation evidenced a continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs within the military community, *i.e.,* the servicemember's home. These incidents demonstrate not only the depth of appellant's sexual problems, but also the true impact of the charged offenses on the members of his family. These were appropriate sentence considerations under the above Manual rule.

*Mullens,* 29 M.J. at 400 (internal citations omitted). As in *Mullens,* important considerations in this sentence included the depth of the appellant's sexual problems and the impact of the appellant's sexual misconduct upon the members of his family.

I cannot join the analysis and conclusions regarding the interplay between MILITARY RULE OF EVIDENCE 414, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.) and R.C.M. 1001. Our superior court has clearly held that R.C.M. 1001 comprises the only gate through which presentencing evidence may enter the courtroom. *United States v. Wingart,* 27 M.J. 128, 135–36 (C.M.A.1988). Thus, R.C.M. 1001 may fairly be read to confer greater due process rights upon the military defendant than he might find in civilian criminal courts. If Congress or the President choose to change the rules by applying MIL. R. EVID. 414 to presentencing evidence, so be it. But this court cannot and should not attempt to do so. The fact that presentencing hearings in civilian cases in state and federal court feature more expansive rules is not an appropriate consideration in our analysis. *See Wingart,* 27 M.J. at 136.