# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39830**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Andrew S. HONG**
Cadet, U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 26 May 2021

———————————

*Military Judge:* Matthew D. Talcott.

*Sentence:* Sentence adjudged on 6 August 2019 by GCM convened at the United States Air Force Academy, Colorado. Sentence entered by military judge on 16 September 2019: Dismissal, confinement for 8 months, forfeiture of all pay and allowances, and a reprimand.

*For Appellant:* Lieutenant Colonel Kirk W. Albertson, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Kelsey B. Shust, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges*.

Chief Judge J. JOHNSON delivered the opinion of the court, in which Judge KEY joined. Senior Judge POSCH filed a separate dissenting opinion.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

J. JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement (PTA),

of two specifications of assault consummated by a battery and one specification of assault in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1],[2] The military judge sentenced Appellant to a dismissal, confinement for 12 months, forfeiture of all pay and allowances, and a reprimand. The convening authority signed a "Decision on Action" memorandum which stated Appellant's term of confinement was reduced from 12 months to 8 months pursuant to the terms of the PTA. Thereafter, the military judge signed an entry of judgment stating the final sentence, as modified by the convening authority's action, as a dismissal, confinement for eight months, total forfeiture of pay and allowances, and a reprimand.

Appellant raises a single issue on appeal: whether he is entitled to sentence relief due to post-trial delay before his case was docketed with this court. However, we do not reach this issue and instead address an issue not raised by the parties: whether the convening authority failed to take action on the sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)).

We find the convening authority failed to take action on the entire sentence as he was required to do, and that remand to the Chief Trial Judge, Air Force Trial Judiciary, is appropriate. Accordingly, we defer addressing Appellant's assignment of error until the record is returned to this court for completion of our Article 66, UCMJ, 10 U.S.C. § 866, review.

## I. BACKGROUND

### A. Factual Background

On or about 28 April 2018, Appellant, a United States Air Force Academy cadet, attended a house party in Fort Collins, Colorado, with four other cadets and a civilian friend of Appellant. The civilian friend had procured alcohol for the group. After eating, the group socialized and drank alcohol, and Appellant became intoxicated.

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ and all references to the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] In accordance with the PTA, Appellant pleaded not guilty to two specifications of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920, and one specification of attempted abusive sexual contact in violation of Article 80, UCMJ, 10 U.S.C. § 880. These charges and specifications were withdrawn and dismissed after arraignment.

JM, a female cadet and friend of Appellant, became intoxicated to the point that she felt ill and vomited. After vomiting, JM lay down to go to sleep on the floor of the living room. Eventually the other cadets with the exception of Appellant also went to sleep. Appellant remained awake in the living room with the sleeping JM and two other sleeping cadets.

After some time, Appellant moved next to JM and held her hand. This woke JM, but she pretended to remain asleep. Appellant kissed JM's hand and held it against his face. While JM appeared to remain asleep, Appellant kissed her cheek and lips, then reached under her shirt and touched her breast over her bra. Appellant then moved his hand toward the waistband of JM's pants and underwear, touching her stomach and intending to touch her genitalia. At that point JM, still pretending to be asleep, moved Appellant's hand away.

Appellant resumed kissing JM, but she began to shift her shoulders and body which caused him to believe she was waking up. In an effort to increase JM's intoxication, Appellant took a sip of vodka and transferred it from his mouth to JM's mouth. However, this caused JM to choke and cough violently. JM ran to the bathroom. In response, Appellant pretended to be asleep on the floor, and eventually did fall asleep.

The following day, JM sent a text message to Appellant stating she knew what he had done the night before. In response, Appellant admitted he also knew what he had done, told JM he had no excuse, and apologized.

## B. Procedural Background

On 16 May 2019, the original charges and specifications alleging violations of Articles 80 and 120, UCMJ, 10 U.S.C. §§ 880, 920, were referred for trial by a general court-martial. On 2 August 2019, the additional charge and specifications alleging violation of Article 128, UCMJ, were preferred and referred. On the same day Appellant and the convening authority entered a PTA whereby the convening authority agreed, *inter alia*, to withdraw and dismiss with prejudice the original charges and, in the event the court-martial sentenced Appellant to a dismissal, not to approve any confinement in excess of eight months.

Appellant's court-martial occurred on 6 August 2019. The military judge found Appellant guilty of the additional charge and specifications in accordance with his pleas and sentenced Appellant to a dismissal, confinement for 12 months, forfeiture of all pay and allowances, and a reprimand.

After considering Appellant's clemency matters and consulting with the staff judge advocate, on 27 August 2019 the convening authority signed a memorandum with the subject line "Convening Authority Decision on Action." In the memorandum the convening authority stated *inter alia* that he took no action on the findings, and took "the following action on the sentencing in this

case. [ ] The period of confinement is reduced from 12 months to 8 months. *I take no other action on the sentencing in this case.*" (Emphasis added). The memorandum also provided the language of the adjudged reprimand, and included the statement: "Unless competent authority otherwise directs, upon completion of the sentence to confinement, [Appellant] will be required, under Article 76a, UCMJ, to take leave pending completion of appellate review." On 16 September 2019, the military judge signed the entry of judgment which reflected the convening authority's reduction of the term of confinement and reprimand language.

## II. DISCUSSION

The charges and specifications were referred to trial after 1 January 2019; therefore, the Rules for Courts-Martial that went into effect on 1 January 2019 were generally applicable to the post-trial processing of Appellant's case. *See* Executive Order 13,825, § 5, 83 Fed. Reg. at 9890. However, the charged offenses occurred prior to 1 January 2019. Therefore, in accordance with Executive Order 13,825, § 6, the version of Article 60, UCMJ, 10 U.S.C. § 860, in effect prior to 1 January 2019 applied to the convening authority to the extent that it required him to take action on the sentence. 83 Fed. Reg. at 9890. Before 1 January 2019, Article 60, UCMJ, required the convening authority to take action on the sentence in every case. 10 U.S.C. § 860 (2016 *MCM*) ("Action on the sentence of a court-martial shall be taken by the convening authority or by another person authorized to act under this section."); *see also United States v. Perez*, 66 M.J. 164, 165 (C.A.A.F. 2008) (per curiam) ("[T]he convening authority is required to take action on the sentence . . . ."); R.C.M. 1107(f)(4)(A) (2016 *MCM*) ("The action shall state whether the sentence adjudged by the court-martial is approved. If only part of the sentence is approved, the action shall state which parts are approved.").

The convening authority's 27 August 2019 memorandum indicated that he took action specifically to reduce Appellant's term of confinement in accordance with the terms of the PTA. In addition, the provision of the language of the adjudged reprimand and reference to Appellant taking leave "under Article 76a, UCMJ," implied the continued existence of the reprimand and dismissal. *See* 10 U.S.C. § 876a. However, the convening authority did not specifically approve, disapprove, commute, or suspend any element of the sentence other than to reduce the confinement; in fact, he asserted he took "no other action" on the sentence. *See* 10 U.S.C. § 860(c)(2) (2016 *MCM*).

This situation is substantially similar to that in *United States v. Lopez*, No. ACM S32597, 2020 CCA LEXIS 439 (A.F. Ct. Crim. App. 8 Dec. 2020) (unpub. op.), and several other recent decisions by this court where we have remanded the record of trial to address incomplete and ambiguous convening authority

actions. *See*, *e.g.*, *United States v. Huff*, No. ACM 39845, 2021 CCA LEXIS 168 (A.F. Ct. Crim. App. 8 Apr. 2021) (unpub. op.); *United States v. Anderson*, No. ACM S32671, 2021 CCA LEXIS 134 (A.F. Ct. Crim. App. 30 Mar. 2021) (unpub. op.); *United States v. Corpetts*, No. ACM S32633, 2021 CCA LEXIS 21 (A.F. Ct. Crim. App. 25 Jan. 2021) (unpub. op.). We recognize that panels of this court composed of other judges have applied different reasoning in cases where the convening authority did not take action on the entire sentence, or purported to take "no action" on the sentence. *See*, *e.g.*, *United States v. Merritt*, No. ACM 39754, 2021 CCA LEXIS 61, at *2 n.2 (A.F. Ct. Crim. App. 11 Feb. 2021) (unpub. op.); *United States v. Jackman*, No. ACM 39685 (f rev), 2021 CCA LEXIS 26 (A.F. Ct. Crim. App. 26 Jan. 2021) (unpub. op.); *United States v. Cruspero*, No. ACM S32595, 2020 CCA LEXIS 427 (A.F. Ct. Crim. App. 24 Nov. 2020) (unpub. op.); *United States v. Aumont*, No. ACM 39673, 2020 CCA LEXIS 416 (A.F. Ct. Crim. App. 20 Nov. 2020), (en banc) (unpub. op.), *rev. granted*, ___ M.J. ___, No. 21-0126, 2021 CAAF LEXIS 389 (C.A.A.F. 2021). However, we continue to adhere to the same view expressed in the majority opinion in *Lopez* in situations where the convening authority fails to take action on the entire sentence as required by Executive Order 13,825 and the pre-1 January 2019 version of Article 60, UCMJ.

Accordingly, we conclude the convening authority's action purporting to take no action on the sentence other than to reduce the term of confinement was incomplete and ambiguous, and therefore deficient. *See United States v. Politte*, 63 M.J. 24, 26 (C.A.A.F. 2006) (stating the convening authority's action is required to be "clear and unambiguous"). For the reasons set forth in the majority opinion in *Lopez*, we find the record should be remanded to the Chief Trial Judge, Air Force Trial Judiciary, to resolve the error. *See* Article 66(f)(3), UCMJ, 10 U.S.C. § 866(f)(3); *Lopez*, unpub. op. at *8–11.

## III. CONCLUSION

The record is **REMANDED** to the Chief Trial Judge, Air Force Trial Judiciary, to resolve a substantial issue with the convening authority's decision memorandum as the action taken on Appellant's adjudged sentence was ambiguous and incomplete.

Our remand returns jurisdiction over the case to a detailed military judge and dismisses this appellate proceeding consistent with Rule 29(b)(2) of the Joint Rules for Appellate Procedure for Courts of Criminal Appeals. JT. CT. CRIM. APP. R. 29(b)(2). A detailed military judge may:

(1) Correct the Statement of Trial Results;[3]

(2) Return the record of trial to the convening authority or his successor to take action on the sentence;

(3) Conduct one or more Article 66(f)(3), UCMJ, proceedings using the procedural rules for post-trial Article 39(a), UCMJ, sessions; and/or

(4) Correct or modify the entry of judgment.

Thereafter, the record of trial will be returned to the court for completion of appellate review under Article 66, UCMJ.

POSCH, Senior Judge (dissenting):

I disagree that the convening authority failed to effectuate a sentence he determined was appropriate for Appellant and that was in accordance with the limitation on sentence in the pretrial agreement (PTA). I dissent because the convening authority's decision not to disturb[1] Appellant's adjudged sentence other than to comply with the confinement limitation in the PTA closely tracked the convening authority's obligations under the Military Justice Act of 2016 (MJA),[2] as implemented by the President effective on 1 January 2019 in Exec. Order 13,825, 83 Fed. Reg. 9889 (8 Mar. 2018).

The convening authority did not err because Article 60a, UCMJ, 10 U.S.C. § 860a, contained in the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*), governed the convening authority's decision on action on the three components of the sentence on which the convening authority granted no relief—the adjudged dismissal, total forfeiture of pay and allowances, and reprimand. In this regard, I adhere to the view expressed in *United States v. Lopez*, No. ACM S32597, 2020 CCA LEXIS 439, at *12–46 (A.F. Ct. Crim. App. 8 Dec. 2020) (Posch, S.J., dissenting) (unpub. op.); *United States v. Aumont*, No. ACM 39673, 2020 CCA LEXIS 416, at *36–79 (A.F. Ct. Crim. App. 20 Nov. 2020) (en banc) (Posch, S.J., concurring in part and in the result) (unpub. op.), *rev. granted*, ___ M.J. ___, No. 21-0126, 2021 CAAF LEXIS 389 (C.A.A.F. 4

---

[3] The Statement of Trial Results failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3). Appellant has not claimed prejudice from the error. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.).

[1] At times, this opinion will describe a convening authority's modification of a sentence as having "disturbed" the sentence. "Modify" and "disturb" are used interchangeably.

[2] *See* National Defense Authorization Act for Fiscal Year 2017 (FY17 NDAA), Pub. L. No. 114-328, §§ 5001–5542 (23 Dec. 2016).

Mar. 2021); and *United States v. Barrick*, No. ACM S32579, 2020 CCA LEXIS 346, at \*9–36 (A.F. Ct. Crim. App. 30 Sep. 2020) (Posch, S.J., concurring in the result) (unpub. op.).

However, because action on the adjudged 12 months of confinement was required to comply with the PTA, the convening authority did not err when he followed Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)), to reduce Appellant's confinement to eight months. As this opinion will explain, the convening authority's action to reduce Appellant's confinement was in accordance with the authority Congress assigned to the President to implement the MJA, and, in turn, the President's implementation of the Act. In this regard, I again adhere to my analysis of this issue in *Lopez,* unpub. op. at \*12–46; *Aumont,* unpub. op. *at* \*36–79; and *Barrick,* unpub. op. at \*9–36. I maintain that in order to effectuate the confinement cap in Appellant's PTA, the convening authority was required to follow Article 60 in the 2016 *MCM* "to the extent that Article 60 . . . requires action by the convening authority on the sentence" as directed by the President in Exec. Order 13,825, § 6(b)(1), 83 Fed. Reg. at 9890. The convening authority followed Article 60, UCMJ (2016 *MCM*), because there is no legal authorization in the 2019 *MCM* for the convening authority to honor Appellant's confinement limitation and effectuate the sentence—as there is in the 2016 *MCM*—by enforcing the sentence limitation in the PTA that Appellant entered into with the convening authority.

After receiving the convening authority's Decision on Action memorandum, Appellant did not raise a motion with the military judge under Rule for Courts-Martial (R.C.M.)[3] 1104(b)(2)(B), which suggests that Appellant either had no reason to believe that the convening authority's decision on any component of his sentence was "incomplete, irregular, or contain[ed] error" or that he suffered any prejudice. Even on appeal, Appellant identifies no error, plain or otherwise, that would rebut a presumption of regularity in the manner by which the convening authority effectuated Appellant's sentence after the convening authority received the advice of a staff judge advocate (SJA).[4] *See United States v. Wise*, 20 C.M.R. 188, 194 (C.M.A. 1955) ("[T]he presumption of regularity requires us to presume that [the convening authority] carried out the duties imposed upon him by the Code and the Manual."); *see also United States v.*

---

[3] Unless otherwise noted, references to the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

[4] *See* R.C.M. 1109(d)(2) ("In determining whether to take action, or to decline taking action under this rule, the convening authority shall consult with the staff judge advocate or legal advisor.").

*Scott*, 66 M.J. 1, 4 (C.A.A.F. 2008) (applying a "presumption of regularity" to the convening authority's decision).

To be sure, if legacy provisions of Article 60, UCMJ (2016 *MCM*), were operable to guide the convening authority to approve each and every component of the sentence, as the opinion of the court finds that they were here, then it would follow that "[a]ction on the sentence . . . shall be taken." Article 60(c)(2)(A), UCMJ, 10 U.S.C. § 860(c)(2)(A) (2016 *MCM*). "Action" on the sentence as that term is used in the 2016 *MCM* means to "approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part." Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2). After Appellant pleaded guilty and was sentenced, the convening authority indicated none of these options in regard to the adjudged dismissal, total forfeiture of pay and allowances, and reprimand. The convening authority reduced the confinement from 12 to 8 months, but otherwise effectuated the entire sentence by taking no action on the other components. The military judge who presided over Appellant's court-martial signed an entry of judgment that accurately reflected the findings and the sentence as modified by the convening authority.

Resolution that the convening authority did not err in the manner by which he effectuated all four components of Appellant's sentence turns on understanding several provisions of the President's implementation of Article 60a, UCMJ, in the 2019 *MCM*, above all, Exec. Order 13,825, §§ 3(a), 5, and 6(b), 83 Fed. Reg. at 9889–90. Because the convening authority's decision memorandum was altogether in accordance with the President's implementation and the law, I part ways with my colleagues and conclude that the convening authority did not err when he took no action on the adjudged dismissal, total forfeiture of pay and allowances, and reprimand.

## A. President's Authority to Promulgate Executive Order 13,825 § 6(b)

Before addressing the legality of the convening authority's decision with respect to the three components on which no action was taken, it is necessary to explain why the President has the authority to allow a convening authority to apply a legacy provision of Article 60, UCMJ, as codified in the 2016 *MCM*, to reduce an appellant's adjudged confinement to comply with a PTA. For reasons already discussed, and more fully discussed later in this opinion, I believe the opinion of the court correctly resolves that—in accordance with the President's implementation of the MJA—the convening authority was required to apply a legacy provision of Article 60, UCMJ (2016 *MCM*), to effectuate the confinement cap in Appellant's PTA.

Fundamental to this conclusion, and an issue of first impression for this court, is that Exec. Order 13,825, § 6(b), is a lawful exercise of authority Con-

gress assigned to the President. Section 6(b) guides when a convening authority may apply the legacy provisions of Article 60, UCMJ, that were "in effect on the date of the earliest offense of which the accused was found guilty." But the legacy provisions of Article 60, UCMJ, may apply to a convening authority only if an appellant has been "found guilty of a specification alleging the commission of one or more offenses *before* January 1, 2019." (Emphasis added). Exec. Order 13,825, § 6(b).

In spite of the President's guidance to convening authorities in § 6(b), with few limitations, Congress directed that the President's implementation "shall take effect" *not later than* 1 January 2019.[5] Among the MJA changes that took effect on this date is Congress' direction to convening authorities in Articles 60a and 60b, UCMJ, 10 U.S.C. §§ 860a, 860b (2019 *MCM*),[6] which changed the legacy procedures guiding a convening authority to effectuate an adjudged sentence that a convening authority either has no authority or no intention to disturb. A conflict is apparent and begs an answer to this question on which the reasoning of the opinion of the court and this opinion are predicated: under what authority can the President authorize a convening authority to continue to follow a legacy provision of Article 60, UCMJ, after Congress enacted Articles 60a and 60b, UCMJ, which went into effect on 1 January 2019?[7] The answer is that Congress assigned this authority to the President in a clarifying

---

[5] The FY17 NDAA, including the MJA in Division E of the NDAA, was enacted on 23 December 2016. "Except as otherwise provided in this division, the amendments made by this division shall take effect on the date designated by the President, which date shall be not later than the first day of the first calendar month that begins two years after the date of the enactment of this Act." *See* FY17 NDAA, Pub. L. No. 114-328, § 5542(a).

[6] Exec. Order 13,825, § 3(a), made the changes to Articles 60a and 60b, 10 U.S.C. §§ 860a, 860b (2019 *MCM*), effective on 1 January 2019, unless otherwise provided by exception. *See* 83 Fed. Reg. 9889 (8 Mar. 2018) ("[E]xcept as otherwise provided by the MJA or this order, the MJA shall take effect on January 1, 2019.").

[7] In the pending case of *United States v. Brubaker-Escobar*, the United States Court of Appeals for the Armed Forces specified the following issue, which is similar to the question at hand:

> WHETHER SECTION 6(b) OF EXECUTIVE ORDER 13,825 OF MARCH 1, 2018 WAS A LAWFUL EXERCISE OF THE AUTHORITY DELEGATED TO THE PRESIDENT BY SECTION 5542(c)(1) OF THE NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2017 OR BY ANY OTHER LAW.

amendment in the National Defense Authorization Act (NDAA) in the year after the MJA was enacted, and before the President issued Executive Order 13,825.[8]

Arguably, Congress did not assign this authority to the President when the MJA was enacted. *See* National Defense Authorization Act for Fiscal Year 2017 (FY17 NDAA), Pub. L. No. 114-328, § 5542(c)(1). Instead, § 5542(c)(1) of the MJA allowed the President to "prescribe in regulations whether, and to what extent, the amendments made by" the MJA legislation "shall apply to a case in which *one or more actions*" (emphasis added) under the UCMJ "have been taken before the effective date of such amendments," that is, before the effective date of 1 January 2019 that was chosen by the President.

Perhaps, it is questionable whether "one or more actions" as used in the legislation encompasses "a specification alleging the commission of one or more offenses" as directed by the President in Exec. Order 13,825, § 6(b). However, in the very next NDAA, Congress assigned to the President the authority to promulgate Exec. Order 13,825, § 6(b), that was arguably missing from § 5542(c)(1) in the FY17 NDAA. In the NDAA for Fiscal Year 2018 (FY18 NDAA), Congress authorized the President to prescribe regulations that would allow a convening authority to apply legacy provisions of Article 60, UCMJ, to cases in which a specification alleges the commission of an offense before the effective date of the President's 1 January 2019 implementation. With the FY18 NDAA clarifying amendment, § 5542(c)(1) reads as follows:

> In general. Subject to the provisions of this division and the amendments made by this division, the President shall prescribe in regulations whether, and to what extent, the amendments made by this division shall apply to a case in which *a specification alleges the commission, before the effective date of such amendments, of one or more offenses or to a case in which*[9] one or more actions under chapter 47 of title 10, United States Code

---

__ M.J. __, No. 20-0345, 2021 CAAF LEXIS 231 (C.A.A.F. 15 Mar. 2021); *see also United States v. Brubaker-Escobar*, 80 M.J. 376 (C.A.A.F. 2020) (granting review of petition on another issue).

8 Exec. Order 13,825 is dated 1 March 2018. *See* 83 Fed. Reg. at 9889 (8 Mar. 2018).

9 The National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, § 531(n)(1) (12 Dec. 2017) states:

> Section 5542(c)(1) of the Military Justice Act of 2016 (division E of Public Law 114-328; 130 Stat. 2967) is amended by inserting after "shall apply to a case in which" the following: "a specification alleges the commission, before the effective date of such amendments, of one or more offenses or to a case in which."

> (the Uniform Code of Military Justice), have been taken before
> the effective date of such amendments.

FY17 NDAA, Pub. L. No. 114-328, § 5542(c)(1), as amended by FY18 NDAA, Pub. L. No. 115-91, § 531(n)(1) (12 Dec. 2017) (emphasis added).

Thus, § 5542(c)(1), as amended by the FY18 NDAA, authorizes the President to regulate whether and to what extent a convening authority may apply legacy provisions of Article 60, UCMJ, when a specification alleges the commission of an offense before 1 January 2019 that is referred on or after 1 January 2019—the effective date of the MJA. It follows that Exec. Order 13,825, § 6(b), is a lawful exercise of authority assigned to the President.

**B. Article 60a, UCMJ (2019 *MCM*)**

Appellant was convicted of offenses he committed after 24 June 2014, which is the effective date of Article 60, UCMJ, in the 2016 *MCM*.[10] In courts-martial for offenses occurring on and after this date, and before implementation of the MJA, a convening authority was required to take action to effectuate the sentence in every court-martial case.[11] *See* Article 60(c)(2)(A), UCMJ (2016 *MCM*) ("Action on the sentence of a court-martial shall be taken by the convening authority . . . .").

The MJA changed this requirement when Congress amended Article 60a, UCMJ, as it appears in the 2019 *MCM*[12] to require that a convening authority take "action" on the sentence if and only if a convening authority intends to

---

[10] *See* National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, § 1702, 127 Stat. 672, 958 (26 Dec. 2013) (establishing 24 June 2014 as the effective date for Article 60, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 860, as it appears in the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)).

[11] Before the effective date of the Military Justice Act of 2016 (MJA), a convening authority was required to either approve the sentence of the court-martial, or—subject to limits on that authority as provided by law—disapprove, commute, or suspend the sentence, in whole or in part. *See, e.g.*, Article 60(c)(2) and (c)(4), UCMJ, 10 U.S.C. § 860(c)(2), (c)(4) (2016 *MCM*). Importantly, and as later discussed in this opinion, a convening authority has the authority pursuant to Article 60 in the 2016 *MCM* to take action to comply with the terms of a pretrial agreement entered into with an accused. *See* Article 60(c)(4)(C), UCMJ, 10 U.S.C. § 860(c)(4)(C) (2016 *MCM*). No similar power conferred on a convening authority is found in the 2019 *MCM*.

[12] The changes made to Article 60, UCMJ (2016 *MCM*), as now reflected in Article 60a, UCMJ, and in other articles that were subsequently incorporated in the 2019 *MCM*, were among the many changes that Congress directed in the MJA.

grant relief by reducing, commuting, suspending, or in some cases, by disapproving a sentence, in whole or in part, as allowed for by law.[13] In accordance with Article 60a, UCMJ, in the 2019 *MCM*, a convening authority's formal refusal to act—that is, declination to act by taking no action on a component of an adjudged sentence—effectuates that part of the sentence in the same way that a convening authority once approved the component without modification under the former Article 60, UCMJ (2016 *MCM*). This change is perhaps most clearly stated in Article 60a(f)(2), UCMJ, in the 2019 *MCM* by the conditional language: "*If*, under this section, the convening authority reduces, commutes, or suspends the sentence, the decision of the convening authority shall include a written explanation of the reasons for such action." 10 U.S.C. § 860a(f)(2) (emphasis added).[14] After the convening authority's decision, the judgment of the court-martial consists of the adjudged sentence that is listed in the Statement of Trial Results as may be modified by "*any* post-trial action by the convening authority." Article 60c(a)(1)(B)(i), UCMJ, 10 U.S.C. § 860c(a)(1)(B)(i) (2019 *MCM*) (emphasis added).

For many years, military justice practitioners have become accustomed to thinking of "action" as effectuating the sentence—whether by granting relief or not—as this term appears in editions of the *Manual for Courts-Martial* before the 2019 *MCM*. *See*, *e.g.*, Article 60(c)(2)(B), UCMJ, 10 U.S.C. § 860(c)(2)(B) (2016 *MCM*) (convening authority "may approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part"). This legacy and more comprehensive definition gave way to a more specific meaning in the MJA and the President's implementation of the Act. Although not expressly defined, taking "action" in the 2019 *MCM* reveals it to mean disturbing the sentence by "granting relief" each and every time that a convening authority decides to take action on the sentence in a particular case. *See*, *e.g.*, Article 60c(a)(1)(B)(i), UCMJ (2019 *MCM*) (the judgment of the court-martial consists of the adjudged sentence listed in the Statement of Trial Results as modified by "*any* post-trial action by the convening authority."). Conversely, in accordance with Article 60a, UCMJ, in the 2019 *MCM*, a convening authority's "no action" decision on a component of an adjudged sentence results in an entry of judgment that reflects the sentence adjudged for that component without modification, as it did here.

---

[13] *See* Articles 60a and 60b, UCMJ (2019 *MCM*). In certain cases the convening authority may also act to "disapprove" a sentence in whole or in part. *See* Article 60b(a)(1)(C)–(F), UCMJ, 10 U.S.C. § 860b(a)(1)(C)–(F) (2019 *MCM*).

[14] *See also* Article 60a(a)(1)(A), UCMJ, 10 U.S.C. § 860a(a)(1)(A) (2019 *MCM*) (subject to limitations, a convening authority "*may* act on the sentence of the court-martial" (emphasis added)).

In Appellant's case, the language of the convening authority decision to take no action on the adjudged dismissal, total forfeiture of pay and allowances, and reprimand is synonymous with not granting relief on these sentence components. By deciding to take no action on these components, the convening authority followed the post-trial procedures that Congress directed in the MJA, notably Article 60a, UCMJ, in the 2019 *MCM*, and not the legacy procedures in Article 60 in the 2016 *MCM*. As a result, the question of whether the convening authority's decision memorandum contains error turns on the post-trial procedures that Congress and the President intended the convening authority to follow. Answering this question requires review of the convening authority's decision in light of the President's implementation of the MJA. If taking no action on these components complied with the implementation of the Act, as I conclude that it did, then there is no error to evaluate for harmlessness or to correct on appeal or by remand to a military judge.

**C. Implementation of the MJA: Executive Order 13,825**

In the MJA, Congress assigned to the President considerable discretion to set the effective date of the amendments to the UCMJ and to prescribe the regulations implementing those amendments.[15] However, that discretion was bounded by a date by which implementation must be completed. As discussed earlier, with few limitations, Congress directed that the implementation "shall take effect" not later than 1 January 2019.[16] The President then exercised this authority by issuing Executive Order 13,825 and new Rules for Courts-Martial that are listed in Annex 2 of the Executive Order and that were subsequently promulgated in Part II of the 2019 *MCM*.

In accordance with the direction assigned by Congress, the President implemented Article 60a, UCMJ (2019 *MCM*), which directs changes in the manner by which a convening authority effectuates a sentence without modification (i.e., as adjudged). Exec. Order 13,825, § 3(a), made the changes to Article 60a, UCMJ (2019 *MCM*), effective on 1 January 2019, unless otherwise provided by exception. *See* 83 Fed. Reg. at 9889. Reciprocally, Exec. Order 13,825, § 5, effected new Rules for Courts-Martial for cases referred to trial by court-martial

---

[15] *See* FY17 NDAA, Pub. L. No. 114-328, § 5542; *see also* Article 36(a), UCMJ, 10 U.S.C. § 836(a), in the 2016 and 2019 *MCMs* (stating the President may prescribe regulations for post-trial procedures); *United States v. Bartlett*, 66 M.J. 426, 428 (C.A.A.F. 2008) (holding the authority to prescribe regulations prevails "insofar as such regulations are not inconsistent with the UCMJ").

[16] *See* FY17 NDAA, Pub. L. No. 114-328, § 5542(a).

on and after 1 January 2019.[17] The new rules implement the amendments made by Congress in Article 60a, UCMJ, in the 2019 *MCM*, and include considerable revisions in the manner by which the convening authority effectuates an appellant's sentence after one has been adjudged.

Among the rules that took effect on 1 January 2019 for cases referred on and after that date are R.C.M. 1109 and 1110 that guide a convening authority's decision whether to take action on an adjudged sentence.[18] Following the new procedures in those rules, which implement and track the amendments that Congress made to Article 60a, UCMJ, that were incorporated in the 2019 *MCM*, the convening authority does not effectuate a sentence by taking action unless the convening authority intends to reduce, commute, or suspend, or in some cases, disapprove a sentence, in whole or in part. R.C.M. 1109(c)(5)(A), (g)(2); R.C.M. 1110(c), (e). Under these rules, a "convening authority is no longer required to take action on the results of every court-martial." *United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.) (citing R.C.M. 1109 and 1110). Instead, a convening authority may decline to take action after consulting with the SJA and considering clemency matters timely submitted by an accused and victim, if any. R.C.M. 1109(c), (d), (g); R.C.M. 1110(c)(1) ("action on the sentence is not required"); *see also Moody-Neukom*, unpub. op. at *3.

## D. Application of the MJA, as Implemented, to Appellant's Case

One turns then to consider the effect of the President's implementation of the MJA in Executive Order 13,825 on the post-trial procedures that are applicable here. The additional charge and specifications were referred to trial by general court-martial on 2 August 2019. Thus, the convening authority was required to follow the procedural provisions in the 2019 *MCM* that went into effect on 1 January 2019, notably R.C.M. 1109 and 1110, as applicable, that are germane to a convening authority's power and responsibility in post-trial processing. In accordance with these rules, unless the convening authority had

---

[17] *See* Exec. Order 13,825, § 5, 83 Fed. Reg. at 9890 (incorporating in the 2019 *MCM* new Rules for Courts-Martial among the amendments in Annex 2, that "shall take effect on January 1, 2019," subject to exceptions that are not applicable here); *see also* FY17 NDAA, Pub. L. No. 114-328, § 5542(c)(2) (stating MJA amendments to the UCMJ "shall not apply to any case in which charges are referred to trial by court-martial before the effective date of such amendments").

[18] *See* Exec. Order 13,825, § 5, 83 Fed. Reg. at 10040–43 (implementing R.C.M. 1109, *Reduction of sentence, general and special courts-martial*); 10043–44 (implementing R.C.M. 1110, *Action by convening authority in certain general and special courts-martial*).

determined to grant relief,[19] or was required to grant relief, the convening authority was under no obligation to disturb the sentence after Appellant was tried and sentenced.

The convening authority took action to reduce Appellant's confinement from 12 to 8 months as he was required to do so by a term of the PTA. In compliance with R.C.M. 1109,[20] the convening authority took no action on the other three components of Appellant's adjudged sentence when he signed the decision memorandum, thereby indicating a formal determination that sentencing relief was either not warranted or not authorized on a particular component. Subsequently, the military judge signed the entry of judgment reflecting the judgment of the court-martial. Consequently, the convening authority's no-action decision on these three components in compliance with the President's implementation of the MJA, as made plain in R.C.M. 1109, was not error. It follows that the judgment entered by the military judge is correct.

Nonetheless, this conclusion that the convening authority did not err in effectuating these three components because he followed Article 60a, UCMJ, and R.C.M. 1109 as implemented by the President in the 2019 *MCM*, parts ways with the opinion of the court here, which finds that the convening authority's decision was error because it failed to meet the requirements of Article 60, UCMJ (2016 *MCM*). This court's decision does not rely on R.C.M. 1109 in the 2019 *MCM*, or attach any significance to the President's implementation of this rule in Exec. Order 13,825, § 5. Instead, the opinion focuses on § 6(b) of this same Executive Order. As applicable to cases like Appellant's where there is a conviction for at least one offense committed before 1 January 2019 that was referred on or after that date, § 6(b) guides a convening authority to apply the legacy provisions of Article 60 in the 2016 *MCM*, in certain prescribed circumstances. Section 6(b) states in pertinent part:

---

[19] The convening authority had the power to reduce, commute, or suspend, in whole or in part, only Appellant's total forfeiture of pay and allowances and the reprimand. *See* R.C.M. 1109(c)(5). This is because the adjudged sentenced included a punitive discharge and also because the sentence of the court-martial included a term of confinement that exceeded six months. *See* R.C.M. 1109(a)(2).

[20] In Appellant's case, R.C.M. 1109 governed the convening authority's discretion, and not R.C.M. 1110, because the adjudged sentenced included a punitive discharge and also because the sentence of the court-martial included a term of confinement that exceeded six months. *See* R.C.M. 1109(a); *see also* R.C.M. 1110(a) (applying rule "to the post-trial actions of the convening authority in any general or special court-martial not specified in R.C.M. 1109(a)").

> If the accused is found guilty of a specification alleging the commission of one or more offenses before January 1, 2019, Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60:
>
> (1) requires action by the convening authority on the sentence
> . . . .

Exec. Order 13,825, § 6(b), 83 Fed. Reg. at 9890.

By the terms of § 6(b)(1),[21] the convening authority was required to follow Article 60, UCMJ, as it appears in the 2016 *MCM*, but only "to the extent that" Article 60, UCMJ, "*requires* action by the convening authority on the sentence." (Emphasis added). If effectuating a sentence does not *require* a convening authority to take action, then § 6(b)(1)'s direction to a convening authority to follow "Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty," is inapposite.

The opinion of the court looks to the language in Article 60, UCMJ, in the 2016 *MCM*, and appears to find the necessary words of obligation in Article 60(c)(2)(A), UCMJ.[22] This provision states without qualification that "[a]ction on the sentence of a court-martial shall be taken by the convening authority." By looking to Article 60(c)(2)(A), UCMJ, in the 2016 *MCM* to understand § 6(b)(1) of the Executive Order, a convening authority would be required to take action (in the legacy sense) in every case, until all of an appellant's convictions are for offenses committed on or after 1 January 2019. By this reasoning, a convening authority would have to disregard the President's implementation of R.C.M. 1109 that went into effect on 1 January 2019 in every case where there is a conviction for at least one offense committed before, and referred on or after, that date. Paradoxically, effective on the same date that the President's implementation of R.C.M. 1109 went into effect, the opinion of the court finds it inapplicable and would nullify its application in cases in which a convening authority determines that granting sentencing relief is not authorized or warranted. It does so despite any indication of such intent in the text of the Executive Order.

To be sure, a convening authority cannot take no action on a component of a sentence in compliance with R.C.M. 1109 in the 2019 *MCM*, and at the same time satisfy the language in Article 60(c)(2)(A), UCMJ, in the 2016 *MCM*. However, the opinion of the court does not address what in my mind is an unmistakable contradiction between the President's implementation of R.C.M. 1109

---

[21] This opinion discusses Exec. Order 13,825, § 6(b)(2)–(5) later.

[22] The majority opinion cites Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2) (2016 *MCM*).

in Exec. Order 13,825, § 5, on the one hand, and my colleagues' understanding of Exec. Order 13,825, § 6(b), on the other. In the case before us, the convening authority cannot abide by the President's implementation of the specific provisions of R.C.M. 1109 in § 5 by taking no action on a component of Appellant's sentence and at the same time have a duty to act in every case so as to effectuate a sentence, which the opinion of the court finds by its reading of § 6(b) that looks to Article 60(c)(2), UCMJ, in the 2016 *MCM*. The decision also fails to explain how its interpretation complied with Congress' direction to the President to implement the MJA by 1 January 2019, notably the post-trial procedures that Congress directed convening authorities to follow to effectuate a sentence.

In reaching the conclusion that the convening authority was required to take action (in the legacy sense) on each of the four components of Appellant's sentence, the opinion of the court interprets one part of the President's implementation so as to render another part, § 5, inconsequential in cases, like Appellant's, where there is a conviction for at least one offense committed before 1 January 2019 that was referred on or after that date, and the convening authority determines no sentencing relief is warranted. By taking "no action" in compliance with R.C.M. 1109 in the 2019 *MCM* as the President intended in Exec. Order, § 5, the majority would find error in an essential and recurring post-trial responsibility that was directed by Congress in the MJA: the manner by which convening authorities effectuate sentences for convictions for pre-1 January 2019 offenses that are referred on and after that date.

Of greater significance, the assignment by Congress to the President to designate the effective date of the MJA amendments was not without limitation. As previously noted, Congress directed that the President's implementation of the Act "shall take effect" not later than 1 January 2019.[23] The amendments to the UCMJ include changes Congress made to the procedural provisions in Article 60, UCMJ, whereby a convening authority may take no action to effectuate a sentence. But the majority opinion's interpretation of Exec. Order 13,825, § 6(b), would require a convening authority to continue to take action on a sentence in accordance with the legacy provisions of Article 60, UCMJ, until the date of the earliest conviction is on or after 1 January 2019. Thus, if the majority opinion's interpretation of Exec. Order 13,825, § 6(b), was correct, it would operate to delay implementation of a key MJA provision well past 1 January 2019. With few exceptions, notably Exec. Order 13,825, §§ 6(a), 9, and 10, the President's implementation of the MJA applies to offenses committed

---

[23] *See* FY17 NDAA, Pub. L. No. 114-328, § 5542(a).

or alleged before 1 January 2019. 83 Fed. Reg. at 9890–91. However, the provisions implemented by exception in §§ 6(a), 9, and 10, which apply to cases in which all specifications allege offenses committed on or after 1 January 2019,[24] relate to important substantive rights of an accused that go beyond the form by which Congress intended a convening authority to effectuate a sentence as is the case here. The President may well have intended these few exceptions were necessary so that an accused would get the benefit of significant legacy provisions in the UCMJ that protect important substantive rights and at the same time comply with the implementation timeline that Congress directed.

Importantly, if the President had intended the changes to the manner by which a convening authority effectuates a sentence in Article 60a, UCMJ, in the 2019 *MCM* to begin on or after 1 January 2019, one might reasonably conclude that the President would have done so expressly instead of by implication. Thus, a delayed implementation in the manner by which a sentence is effectuated in the 2019 *MCM* would raise questions not just about the responsibility of a convening authority under the President's implementation of the MJA, but also, and more fundamental, whether the President's implementation schedule was in compliance with Congress' direction that the President shall implement the Act not later than 1 January 2019.

### 1. Executive Order 13,825

Executive agencies "must always 'give effect to the unambiguously expressed intent of Congress.'" *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 326 (2014) (quoting *National Assn. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 665 (2007)). The United States Court of Appeals for the Armed Forces (CAAF) has similarly cautioned that it "has no license . . . to construe statutes in a way that 'undercut[s] the clearly expressed intent of Congress.'" *United States v. McPherson*, 73 M.J. 393, 396 (C.A.A.F. 2014) (quoting *United States v. Bartlett*, 66 M.J. 426, 428 (C.A.A.F. 2008) (alteration in original)).

The CAAF has recognized that ordinary rules of statutory construction are helpful "when analyzing a rule promulgated by the President," which would seemingly embrace analysis of an executive order like the one here. *United States v. Murphy*, 74 M.J. 302, 305 (C.A.A.F. 2015) ("[I]n determining the scope of a statute, we look first to its language" and "apply the same interpretive process when analyzing a rule promulgated by the President." (internal quotation marks omitted)); *see also United States v. Fetrow*, 76 M.J. 181, 185–86 (C.A.A.F. 2017) (rules of statutory construction are helpful in analyzing provisions of the *Manual for Courts-Martial*). It follows then that judicial review of

---

[24] To be precise, the provisions implemented by Exec. Order 13,825, § 9 "apply only to *offenses* committed on or after January 1, 2019." (Emphasis added).

the President's Executive Order implementing the MJA is not unlike review of an agency's construction of a statute.

When two provisions "initially appear to be in tension," the provisions should be interpreted in a way that renders them compatible, not contradictory. *United States v. Kelly*, 77 M.J. 404, 407 (C.A.A.F. 2008) ("[T]his Court typically seeks to harmonize independent provisions of a statute." (citing *United States v. Christian*, 63 M.J. 205, 208 (C.A.A.F. 2006)). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Kelly*, 77 M.J. at 406–07 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation marks omitted)). "As is true of interpretation of statutes, the interpretation of an Executive Order begins with its text." *Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005) (citation omitted). Thus, when an interpretation of the text of one provision in an executive order works against another provision or an act of Congress, there is good reason to reject that interpretation and look for another.

### 2. Analysis

The place to begin is with the text of the President's implementation. Sections 5 and 6(b) of the Executive Order initially appear to be in tension, so each provision will be examined in turn. The language of § 5 plainly implements the new Rules for Courts-Martial and the text is not subject to more than one possible meaning. It states that "[t]he amendments in Annex 2 [of Executive Order 13,825] . . . shall take effect on January 1, 2019." 83 Fed. Reg. at 9890. As previously discussed, Annex 2 includes the President's implementation of R.C.M. 1109 in the 2019 *MCM* that went into effect for cases referred to trial by court-martial on and after 1 January 2019. The fact that § 5 enumerates three inapposite exceptions to the application of these amendments suggests that there are no other exceptions, lending further validity to the conclusion that the convening authority did not err when he followed R.C.M. 1109 in effectuating the dismissal, total forfeiture of pay and allowances, and reprimand that were adjudged after Appellant's trial.

Whereas § 5 requires looking no further than that provision to determine its meaning and application, § 6(b), in contrast, directs practitioners to first look to the legacy provisions of Article 60, UCMJ, to resolve which version of Article 60, UCMJ, may apply to a particular case, and also, to what extent. This is so because § 6(b) states that "Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . *to the extent that Article 60 . . . requires action by the convening authority on the sentence* . . . ." 83 Fed. Reg. at 9890 (emphasis added). The phrase "to the extent that" is one of limitation that precludes

blanket application of legacy provisions of Article 60, UCMJ. It plainly encompasses conditions in which no legacy provision of Article 60, UCMJ, will apply. This qualifying language makes clear that individual provisions of Article 60a, UCMJ, in the 2019 *MCM* will bind a convening authority unless any one of several conditions is present in Article 60, UCMJ, as was in effect on the date of the earliest offense. First among these conditions is if a legacy provision of an earlier version of Article 60, UCMJ, "requires action by the convening authority on the sentence." Exec. Order 13,825, § 6(b)(1), 83 Fed. Reg. at 9890.

Taking "action," as discussed earlier, has a precise, specialized meaning in the 2019 *MCM* that differs from its more comprehensive meaning to effectuate a sentence in all cases before the MJA's implementation. Thus, a full understanding of the applicability of § 6(b) to Appellant's case entails an examination of Article 60, UCMJ, in the 2016 *MCM* for a circumstance in which a convening authority is required to grant relief (i.e., take action) on the sentence. If such a circumstance was present in a case like Appellant's—where at least one offense was committed on or after 24 June 2014 and before 1 January 2019, that was referred on or after that date—then a convening authority might be required to take action on the sentence by following one or more provisions of Article 60, UCMJ, in the 2016 *MCM*. Such a circumstance would be within the meaning of the President's implementation in § 6(b).

One such circumstance that protects a critical right of an accused is the convening authority's legal duty to honor and effectuate a PTA. A convening authority has no statutory or regulatory authority under any specific provision in the 2019 *MCM* to effectuate a sentence limitation of a PTA, known as a "plea agreement" in the MJA. Instead, such agreements have a binding effect upon their acceptance by a military judge.[25] An accused automatically gets the benefit of the agreement without the convening authority having to take action or approve a sentence to comply with the agreement. However, the President directed that this novel approach to the manner by which agreed-upon sentence limitations are enforced in the MJA takes effect only in cases unlike Appellant's "in which all specifications allege offenses committed on or after January 1, 2019." *See* Exec. Order 13,825, § 10, 83 Fed. Reg. at 9890–91. Conversely, in cases like Appellant's where there is a conviction for at least one offense committed after 24 June 2014 and before 1 January 2019 that was referred on or after that date, a PTA may be consequential and the convening authority would be required to follow the legacy provisions of Article 60, UCMJ (2016

---

[25] *Compare* Article 53a(d), UCMJ, 10 U.S.C. § 853a(d) (2019 *MCM*), *and* R.C.M. 1002(a)(2), *and* R.C.M. 1005, Discussion, *with* Article 60(c)(4)(C), UCMJ (2016 *MCM*), *and* R.C.M. 1107(d)(1)(C)(ii) (2016 *MCM*).

*MCM*), and take action to both honor and effectuate a sentence as agreed to in a PTA.

This is the exact circumstance here. Appellant was convicted of offenses he committed before 1 January 2019 that were referred after that date. Because his adjudged sentence included 12 months of confinement and the limitation on confinement in the PTA was 8 months, the convening authority was *required* to follow Article 60, UCMJ, and R.C.M. 1107[26] in the 2016 *MCM* "to the extent that Article 60 . . . *requires action by the convening authority on the sentence*" as directed by Exec. Order, § 6(b)(1). (Emphasis added). This is so because there is no legal authorization in the 2019 *MCM* for the convening authority to honor the agreement and effectuate the confinement cap—as there is in the 2016 *MCM*—by enforcing a sentence limitation in a PTA.[27] In Appel-

---

[26] R.C.M. 1107 implements Article 60, UCMJ, in the 2016 *MCM*. R.C.M. 1107(d)(1)(C)(ii) guides a convening authority to act on a sentence limitation in a PTA. It states,

> *Pretrial agreement.* If a pretrial agreement has been entered into by the convening authority and the accused, as authorized by R.C.M. 705, the convening authority or another person authorized to act under this rule shall have the authority to approve, disapprove, commute, or suspend a sentence, in whole or in part, pursuant to the terms of the pretrial agreement.

Of note, nothing in the MJA or the President's implementation operate to repeal the R.C.M. that implement provisions of Article 60, UCMJ, in effect before 1 January 2019.

[27] In cases like Appellant's, there is no provision in the 2019 *MCM* that is similar to Article 60(c)(4)(C), UCMJ (2016 *MCM*), that would authorize a convening authority to honor and effectuate an agreed-upon sentencing limitation in a PTA:

> If a pre-trial agreement has been entered into by the convening authority and the accused, as authorized by Rule for Courts-Martial 705, the convening authority or another person authorized to act under this section shall have the authority to approve, disapprove, commute, or suspend a sentence in whole or in part pursuant to the terms of the pretrial agreement . . . .

Article 60(c)(4)(C), UCMJ (2016 *MCM*). In some instances, as was the case in *United States v. Lopez*, No. ACM S32597, 2020 CCA LEXIS 439, at \*34–35 (A.F. Ct. Crim. App. 8 Dec. 2020) (Posch, S.J., dissenting) (unpub. op.), a convening authority can comply with the terms of a PTA through the exercise of clemency power conferred by Article 60a, UCMJ, and R.C.M. 1109 in the 2019 *MCM*. *See* Article 60a(b)(1)(A), UCMJ, 10 U.S.C. § 860a(b)(1)(A) (2019 *MCM*), and R.C.M. 1109(c)(5)(A) (permitting a convening

lant's case the convening authority was *required* to grant relief (i.e., take action) on the sentence by following Article 60, UCMJ, in effect on the date of the earliest offense. Without the legacy provision in Article 60, UCMJ, that allows the convening authority to take the required action on the sentence, the convening authority would be in breach of the PTA if Article 60a, UCMJ (2019 *MCM*), was the only legal authority the convening authority had to effectuate a sentence.

Therefore, with respect to the confinement component of Appellant's sentence, the convening authority was *required* by the President's implementation to follow a legacy provision of Article 60, UCMJ, in the 2016 *MCM* that was in effect on the date of Appellant's earliest offense. Thus, the convening authority's decision to "reduce" Appellant's adjudged confinement and thereby approve only so much of Appellant's sentence to confinement that was in accord with the limitation in the PTA was not error. The convening authority could effectuate the remaining components of Appellant's sentence, as he did, by taking no action on the dismissal, total forfeiture of pay and allowances, and reprimand by looking to Article 60a, UCMJ, and R.C.M. 1109 in the 2019 *MCM*. This, too, was not error. Finally, the military judge correctly entered the judgment of the court-martial, which included the adjudged sentence as modified "by reason of . . . *any* post-trial action by the convening authority." Article 60c, UCMJ (2019 *MCM*) (emphasis added).

Of critical importance, if the convening authority had been required to apply a legacy provision of Article 60, UCMJ, to either approve, disapprove, commute, or suspend each component of Appellant's sentence as found by the opinion of the court, then the word "any" where it appears in Article 60c, UCMJ (2019 *MCM*), that went into effect on 1 January 2019 is inapt.[28] That provision requires, in cases like Appellant's that are referred on and after 1 January 2019, for the judgment of the court-martial to consist of the Statement of Trial Results as modified by "*any* post-trial action by the convening authority." Article 60c(a)(1)(B)(i), UCMJ (2019 *MCM*) (emphasis added). The majority opinion would have "any post-trial action" mean "*the* post-trial action," implying as it does that action (in the legacy sense) is required on every sentence component in every case until such time as all specifications of which an appellant has been found guilty allege offenses on or after 1 January 2019. However,

---

authority to "reduce, commute, or suspend, in whole or in part" the confinement portion of a sentence that is *six months or less*).

[28] Like Article 60a and 60b, UCMJ, the President implemented Article 60c, UCMJ, 10 U.S.C. § 860c, effective 1 January 2019. *See* Exec. Order 13,825, § 3(a), 83 Fed. Reg. at 9889 ("[E]xcept as otherwise provided by the MJA or this order, the MJA shall take effect on January 1, 2019.").

because "action" in the 2019 *MCM* is synonymous with granting relief, all Article 60c, UCMJ, requires is that the adjudged sentence reflected in the Statement of Trial Results may be modified and included in the entry of judgment to the extent that a convening authority *may* grant any relief if the convening authority chooses to disturb the adjudged sentence.

In cases that are referred to trial on or after 1 January 2019, there can be no mistaking Congress' intent that a convening authority's taking "no action" on the sentence effectuates the adjudged sentence in the same way that a convening authority once approved the sentence without modification under the former Article 60, UCMJ (2016 *MCM*). And, there is no mistaking Congress' assigning to the President the authority to implement the MJA, consistent with this intent, not later than 1 January 2019. Significantly, perhaps, the CAAF has looked to dates of legislative enactment when it "harmonize[s] independent provisions of a statute." *Christian*, 63 M.J. at 208 ("It is a well-established principle of statutory construction that, absent a clear direction of Congress to the contrary, a law takes effect on the date of its enactment." (citations omitted)). Additionally, our superior court has "continually reiterated that the Uniform Code of Military Justice controls when an executive order conflicts with part of that Code." *United States v. Pritt*, 54 M.J. 47, 50 (C.A.A.F. 2000) (citing *United States v. Gonzalez*, 42 M.J. 469, 474 (C.A.A.F. 1995); *United States v. Mance*, 26 M.J. 244, 252 (C.M.A. 1988)).

Here, there is no conflict between the President's implementation of the MJA in Executive Order 13,825 and Article 60a, UCMJ (2019 *MCM*), so long as Exec. Order 13,825, §§ 3(a), 5, and 6(b), are each given "full force and effect," *Kelly*, 77 M.J. at 407, on 1 January 2019. Under Exec. Order 13,825, § 6(b)(1), a convening authority looks to the legacy provisions of Article 60, UCMJ, to the extent that a convening authority may be required to take action on the sentence. Because taking "action" in the 2019 *MCM* means "granting relief," practitioners accustomed to "action" being synonymous with effectuating the results of a court-martial in a pre-2019 *MCM* provision may best relate to the contemporary meaning of "action" if § 6(b)(1) is restated thusly,

> If the accused is found guilty of a specification alleging the commission of one or more offenses before January 1, 2019, Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60:

> (1) requires [granting relief] by the convening authority on the sentence[29] . . . .

Exec. Order 13,825, 83 Fed. Reg. at 9890.

This reading of § 6(b)(1) affords "action" its new meaning that is narrower than its legacy use in prior editions of the *Manual. See United States v. Andrews*, 77 M.J. 393, 400 (C.A.A.F. 2018) (questions of interpretation should begin and end with the text, "giving each word its ordinary, contemporary, and common meaning" (quoting *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017))). "[I]t's a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary . . . meaning . . . at the time Congress enacted the statute.'" *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (alteration in original) (quoting *Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018)). And sometimes, "[w]ords in statutes can enlarge or contract their scope as other changes, in law or in the world, require their application to new instances or make old applications anachronistic." *West v. Gibson*, 527 U.S. 212, 218 (1999) (citation omitted).

Giving "action" a contemporary meaning is not only coherent with the new use of the term in Article 60a, UCMJ, and R.C.M. 1109 and R.C.M. 1110 in the 2019 *MCM*, it is also consistent with the use of the term where it appears again in Exec. Order 13,825, § 6(b)(2), which authorizes a convening authority to follow a legacy provision of Article 60, UCMJ, to the extent that it "*permits* action by the convening authority on the findings." 83 Fed. Reg. at 9890 (emphasis added). A contemporary understanding of "action" as synonymous with granting relief renders § 6(b)(2) to mean that it "permits a convening authority to disapprove a finding of guilty or approve a finding of guilty only of a lesser offense" in cases in which a legacy provision of Article 60, UCMJ, grants an accused this right.[30]

---

29 Or, to rephrase grammatically, ". . . requires the convening authority to grant relief on the sentence."

30 *See, e.g.*, Article 60(c)(3), UCMJ, 10 U.S.C. § 860(c)(3), as it appears in the *Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM*), which gives plenary authority to a convening authority to approve or disapprove the findings of a court-martial:

> Action on the findings of a court-martial by the convening authority or other person acting on the sentence is not required. However, such person, in his sole discretion, may—(A) dismiss any charge or specification by setting aside a finding of guilty thereto; or (B) change a finding of guilty to a charge or specification to a finding of guilty to an offense

Most significantly, a contemporary reading avoids a de facto nullification of the President's implementation of R.C.M. 1109 and 1110 in every case where there is a conviction for at least one offense committed before, and referred on or after, 1 January 2019, and a convening authority determines action on the sentence is not warranted. It is incongruous that the President would implement Articles 60a and 60b, UCMJ, and R.C.M. 1109 and 1110 effective on 1 January 2019, and then hold their application in abeyance without some positive statement of intent to that effect in the implementation, as was the case for other articles of the UCMJ and Rules for Courts-Martial.[31]

Moreover, this reading of § 6(b)(1) affords an accused a substantive right to have a convening authority honor a PTA—and not merely specifying the manner by which a convening authority effectuates a sentence—that is in harmony with other substantive provisions of § 6(b), that also protect an accused's rights under legacy provisions of Article 60, UCMJ.[32] To illustrate this point, § 6(b)(5) states that Article 60, UCMJ, in effect on the date of earliest conviction "shall apply to the convening authority" to the extent that it "*authorizes* the convening authority to approve, disapprove, commute, or suspend a sentence in whole or in part." Exec. Order 13,825, § 6(b)(5), 83 Fed. Reg. at 9890. (Emphasis added). Unlike § 6(b)(1), which "requires" a convening authority to look to a legacy provision of Article 60, UCMJ, to take action by granting relief on the

---

that is a lesser included offense of the offense stated in the charge or specification.

[31] *See*, *e.g.*, Exec. Order 13,825, § 10(b), stating that new Rules for Courts-Martial implementing new articles that change sentencing procedures apply "only to cases in which all specifications allege offenses committed on or after January 1, 2019." *See also* Exec. Order 13,825, § 6(a), "The amendments to Articles 2, 56(d), 58a, and 63 of the UCMJ enacted by sections 5102, 5301, 5303, and 5327 of the MJA apply only to cases in which all specifications allege offenses committed on or after January 1, 2019." 83 Fed. Reg. at 9890. Notably, Articles 60a and 60b, UCMJ (2019 *MCM*), that were enacted by sections 5322 and 5323 of the MJA, are not among the new code provisions that the President implemented effective 1 January 2019, and then expressly held in abeyance until all findings of guilty are to offenses that an appellant commits on or after the date of implementation.

[32] The guidance in Exec. Order 13,825, § 6(b), addresses an accused's substantive rights in regard to the findings (Subsection (2)), the adjudged sentence (Subsections (1) and (5)), both the finding and the sentence (Subsection (3)), and a proceeding in revision or a rehearing (Subsection (4)) under prior versions of Article 60, UCMJ, that were in effect on the date of the earliest offense. *See* Exec. Order 13,825, § 6(b)(1)–(5), 83 Fed. Reg. at 9890.

sentence as discussed, § 6(b)(5) is more deferential.[33] It "authorizes" a convening authority to look to a legacy provision of Article 60, UCMJ, "to approve, disapprove, commute, or suspend a sentence in whole or in part," but does not require a convening authority to do any of these things unlike § 6(b)(1). The same is true of § 6(b)(3), which "authorizes" a convening authority to look to a legacy provision of Article 60, UCMJ, to "modify the . . . sentence of a court-martial."

Not insignificantly, the President's direction to convening authorities with respect to legacy provisions of Article 60, UCMJ, is not that "the convening authority shall apply" such provisions, but that such provisions "shall apply to the convening authority," which like the distinction between "authorizes" and "requires" is more deferential in that §§ 6(b)(3) and 6(b)(5) grant authority but do not compel its use. As applied to the case before us, §§ 6(b)(3) and 6(b)(5) do not preclude a convening authority from applying Article 60a, UCMJ (2019 *MCM*), when Article 60, UCMJ (2016 *MCM*), was in effect on the date of Appellant's earliest offense. But, in instances in which a convening authority has plenary authority to effectuate a sentence, for example, as is the case with provisions of Article 60, UCMJ, in the *Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM*), the convening authority is authorized by §§ 6(b)(3) and 6(b)(5) "in his sole discretion," to modify the sentence and to "approve, disapprove, commute, or suspend the sentence in whole or in part." *See* Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2) (2012 *MCM*).[34]

Finally, affording "action" a contemporary meaning in the President's Executive Order reveals that the reliance by the opinion of the court on Article 60(c)(2), UCMJ (2016 *MCM*), to understand when a convening authority's action on the sentence may be required is inapt. As noted previously, subparagraph (A) of this provision states without qualification that "[a]ction on the sentence of a court-martial shall be taken by the convening authority." Because taking "action" in the 2019 *MCM* is synonymous with "granting relief," application of a contemporary meaning to this legacy provision of Article 60, UCMJ (2016 *MCM*), would require a convening authority to grant relief in every case, which is an unreasonable result that the President could not have intended when he issued Executive Order 13,825. *See United States v. Ortiz*, 76 M.J. 189, 192 (C.A.A.F. 2017) ("From the earliest times, we have held to the 'plain

---

[33] Exec. Order 13,825, § 6(b)(3) and (4), each "authorizes" a convening authority to look to a legacy provision of Article 60, and are similarly deferential. Neither "requires" the convening authority to do anything unlike § 6(b)(1).

[34] *See also* Article 60(c)(1), UCMJ, 10 U.S.C. § 860(c)(1) (2012 *MCM*) (authority "to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority").

meaning' method of statutory interpretation. Under that method, if a statute is unambiguous, the plain meaning of the words will control, so long as that meaning does not lead to an absurd result."), *aff'd*, 138 S. Ct. 2165 (2018).

In summary, in cases like Appellant's where there is a conviction for at least one offense committed before 1 January 2019 that was referred on or after that date, a convening authority follows Articles 60a and 60b, UCMJ (2019 *MCM*), and R.C.M. 1109 and 1110, as applicable, that implement the new articles of the UCMJ unless an appellant benefits from the discretion—or mandate—that Congress conferred on a convening authority in a version of Article 60, UCMJ, that was in effect when an appellant committed the earliest offense. If the convening authority determines that granting sentencing relief (i.e., action) is not required under a legacy version of Article 60, UCMJ, for example, to enforce a limitation on sentence in a PTA, or that relief that a convening authority has the power to grant is not warranted upon consideration of an appellant's clemency submission and other matters, then the convening authority follows Articles 60a and 60b, UCMJ, and R.C.M. 1109 and 1110, as applicable, in the 2019 *MCM* to effectuate the sentence. If, however, the convening authority determines that action on the sentence is required under the version of Article 60, UCMJ, in effect on the date of the earliest offense because granting relief is required to effectuate the sentence—as may be the case with a sentence limitation in a PTA—then the convening authority is required to follow a provision in an earlier version of Article 60, UCMJ, and the corresponding R.C.M. that give effect to the convening authority's statutory responsibility to effectuate the sentence.

## E. Conclusion

There is no tension, much less contradiction, with Exec. Order 13,825, §§ 3(a), 5, and 6(b), or other provisions of the President's implementation of the MJA, so long as taking "action" on the sentence is given its contemporary meaning, "granting relief," where "action" appears in Exec. Order 13,825, § 6(b). In the case before us, the convening authority granted no relief on the dismissal, total forfeiture of pay and allowances, and reprimand so he took no action other than to reduce Appellant's confinement from 12 to 8 months. The convening authority had no obligation under the President's implementation of the MJA to "approve" the components of Appellant's sentence on which he took no action.

I find the convening authority fully complied with the President's implementation of the MJA, and that he did not err in the manner by which he effectuated the sentence he determined was appropriate after Appellant's trial, and that the military judge correctly entered as the judgment of the court-martial. The convening authority's decision memorandum was neither ambiguous

nor incomplete as found by the opinion of the court. Accordingly, I find no substantial issue with the convening authority's decision memorandum and would not defer addressing Appellant's assignment of error by remanding the case.

FOR THE COURT

NATALIA A. ESCOBAR
Deputy Clerk of the Court